THE EXCELSIOR NEEDLE COMPANY *vs.* FREDERICK D. SMITH.

Hartford Dist., May T., 1891. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The plaintiffs were a needle manufacturing company located in this state. The defendant and his father had been engaged in the manufacture of needles in Ohio, and sold their business and machinery to the plaintiffs, who soon after removed it to this state. At the time of the purchase the plaintiffs entered into a contract with the defendant, by which the former agreed to employ the latter upon a salary for three years "as a manager, superintendent or agent in their needle business and to give him such or some kindred position in the business," and the defendant agreed to "so engage with said company and to devote his time and skill to its business." The plaintiffs, after the machinery was brought to this state, instructed the defendant to take charge of the manufacture of a certain kind of needle, the machinery for which had been brought from Ohio, and he stated his readiness and competency to do so. The plaintiffs then set apart a room for this work, and directed the defendant to superintend the getting the room in order and the setting up of the machinery. The room needed to be cleaned out, and to have new flooring, windows and shafting. The defendant was with the men, giving some directions about their work, until the fourth day, when he sent the plaintiffs notice that the employment was not such as by the contract they were to give him, and declining to attend to it further, but offering to act as manager or superintendent in the needle business. The plaintiffs demanded that he should return to the employment, but he refused, renewing however his offer to work in such employment as was called for by the contract. In a suit brought by the company for a breach of the contract, in which it was found that the plaintiffs had been benefited by the breach of the contract, it was held—

1. That the work being only temporary, and a necessary preliminary to the setting up of the machinery, and needing intelligent supervision, and there being nothing to show that the term "needle business" was used by the parties in any special sense, the employment must be regarded as fairly within the terms of the contract. But whether the question was not one of fact: *Quœre.*
2. That although the plaintiffs were benefited by the breach of the contract, they were entitled to a judgment for nominal damages.

The defendant upon the trial offered evidence of a conversation between the agent of the plaintiffs and himself before the written agreement was made, as to the kind and nature of the employment that would be given him under the agreement. Held that, so far as the evidence went to contradict, add to or vary the written agreement it was inadmissible, but that it was admissible so far as it tended to show the surrounding circumstances at the time the agreement was made.

[Argued May 5th—decided June 1st, 1891.]

ACTION for the breach of a contract for service; brought to the Superior Court in Litchfield County. Facts found by a committee and by the court, and the case reserved for advice. It is fully stated in the opinion.

*S. W. Kellogg* and *G. H. Welch*, for the plaintiffs.

*L. Harrison*, for the defendant.

TORRANCE, J. On the 11th day of February, 1889, a contract was made between the plaintiff (described in the contract as the party of the second part) and the defendant and his father, (described as the party of the first part), which contained, among others, the following provision : —

"For and in consideration of the sale and transfer of the aforesaid chattels, good-will and business of the said first party to the second party, said second party hereby agrees to and does employ said Frederick D. Smith for the three years next hereto succeeding; the said employment to date from the date of this instrument; and to pay said Frederick D. Smith an annual salary of two thousand dollars, if the employment by said second party of said Smith shall be within the United States, but if the employment of the said

Smith by said second party shall be within the Dominion of Canada, then the second party agrees hereunder to pay the said Smith the sum of two thousand and five hundred dollars per annum; and said second party agrees to and does employ the said Smith as a manager, superintendent or agent in its needle business, and to give him such or some kindred position in said business; said salary to be paid by said second party to said Smith in equal monthly instalments at the end of each and every month during said term. In consideration of the covenants herein of the said second party, the said Frederick D. Smith hereby agrees for said three years to so engage with said company, and to devote his time, attention and skill to the business of said second party."

The plaintiff brought the present suit to recover damages for a breach of the above agreement on the part of the defendant.

The defendant in his answer denied that he had committed any breach of the agreement. He also filed a cross-complaint alleging that the plaintiff had refused to employ him according to the terms of the agreement, stating that he was ready and willing to be employed, and claiming damages for a breach of the agreement on the part of the plaintiff.

The case was referred to a committee, and the only questions presented to the committee arose under the contract concerning the employment of the defendant by the plaintiff, and were, first, who broke the contract, and second, the amount of damages sustained by the breach thereof.

The commitee made a report in writing, which, on motion of the defendant, was by order of the court recommitted for the following purposes:—to find as a question of fact what the parties themselves understood by the contract, provided this could be done from the evidence already before the committee and such fact seemed to the committee to be relevant; to find any other or additional facts which the committee deemed it proper to find, upon the evidence already adduced; and to correct such portions, if any, of the report, as might be found by the committee to be erroneous.

The committee then made a final report, to the acceptance of which the defendant filed a remonstrance, on the ground that certain facts claimed to be material and to have been proved by uncontradicted evidence were not made part of the report. The evidence referred to, being only a part of the evidence in the case, was set out in the remonstrance in full. The plaintiff denied the first part of the remonstrance, and demurred to that part of it which set forth the testimony, on the ground that it set forth only a small part of the testimony upon the question, and because the committee had found all the material facts upon the whole evidence adduced on the trial. Thereupon the Superior Court, at the request and by the agreement of the parties, found from the evidence cited in the remonstrance certain additional facts, which are made part of the record.

The questions of law arising upon the record, including those arising upon the remonstrance and the answer and demurrer thereto, as well as the question of the materiality of the additional facts found by the court, are reserved for the advice of this court.

One of the questions made by the defendant in his brief is, whether the facts set out in the remonstrance and found by the court from the evidence therein detailed, should be treated as a part of the report of the committee. Quite a considerable part of the evidence detailed in the remonstrance consisted of the conversations between the agent of the plaintiff and the defendant, as to the kind and nature of the employment that would be given to him under the contract then about to be made.

So far as the evidence aforesaid was offered, or the additional facts found therefrom by the court were found, for the purpose of contradicting, altering, adding to or varying the written agreement, the above question must be answered in the negative. The language of the written contract, while it was in force, was the only legitimate evidence of what the parties intended and understood by it. *West Haven Water Co.* v. *Redfield*, 58 Conn., 40. So far as said evidence and facts found tended to show the "surrounding circumstances"

under which the agreement in question was made, such evidence was admissible and such facts are relevant. Inasmuch, however, as the court below has found the additional facts which the defendant claims the committee should have found, and the case is one reserved for our advice, we have concluded to regard all the additional facts so found as if they had been embodied in the report itself.

In April, 1889, the plaintiff assigned a certain kind of employment to the defendant, at its factory in Torrington, which it claims was within the terms of the written agreement, and in which it further claims that the defendant without justification refused to engage. The principal question in the case is, whether the defendant was justified in so doing.

The material facts bearing upon this question are the following:—For several years prior to and at the date of the contract the defendant and his father had been engaged in the work of making needles and other things in Cleveland, Ohio. The defendant had attended to the general management of the business, kept most of the books, was in the office when it was necessary, and hired and discharged the help in most cases. There were twenty-five to thirty hands employed. The defendant had the general oversight of all parts of the manufacture there, but of no one part more than another. He did not do the practical work, but looked after the whole business. In February, 1889, and in and by the contract part of which has been hereinbefore recited, the defendant and his father sold to the plaintiff their entire plant of machinery, tools and stock, both finished and unfinished, including the good-will of the business, for a little over fifteen thousand dollars.

After the sale, the needle works at Cleveland were for a short time run by the plaintiff, and the defendant was employed as superintendent thereof, under the written contract.

Soon after the sale, however, the Cleveland plant was removed to the plaintiff's factory at Torrington, in this state. The plaintiff then instructed the defendant to take charge

of that branch of the needle business exclusively devoted to the making of McKay needles.

The McKay needle machinery was part of the Cleveland plant, was in good working order, and had been removed to Torrington. The plaintiff had attempted the McKay needle business about twenty years before the purchase, but had abandoned it for many years.

The defendant shortly before April 1st, 1889, at Torrington, informed the plaintiff that he would be willing to take charge of a department devoted to the making of McKay needles and that he was qualified to do so. For this part of its business the plaintiff had set apart a room separate from the rest of its needle factory, and the defendant was directed to superintend the fitting up of the room for the manufacture of the McKay needles. He was told to supervise the getting of the room in order. The room required, among other changes, cleaning out, new flooring, windows and shafting. The workmen were told to obey the defendant's orders. The defendant was present with the workmen, who were engaged in cleaning, flooring and otherwise preparing the room, from April 1st to April 4th, 1889, and gave some slight directions to them as to their work.

About one o'clock, in the afternoon of April 4th, 1889, the defendant gave written notice to the plaintiff, calling attention to that portion of the contract relating to his employment and claiming that they were not furnishing him employment as manager, superintendent or agent in the needle business, nor giving him any other kindred position in the business. He protested against such non-fulfillment of the contract, and averred his readiness to perform the contract on his part according to its terms.

During the same afternoon the plaintiff handed to the defendant the following letter addressed to him:— " The Excelsior Needle Co. hereby requests and directs you to return this afternoon to the position of superintendent of the McKay department, to which position they have assigned you, and in fitting up which department you have been recently engaged, and said company will presume that

you voluntarily relinquish all claim upon them for further employment unless you shall return to your position within the time above mentioned."

The defendant did not renew or offer to renew his superintendency of the fitting up of the room, although requested orally to do so, and on April 6th addressed another letter to the plaintiff, stating his readiness to act as manager, superintendent or agent in the plaintiff's needle business, and denying that it was his duty as superintendent in the needle business to "boss" the men who were getting the room in readiness. He also complained of the want of proper heating in the room, and offered to inform the plaintiff of the size and amount of shafting required. The defendant complained on the trial that the room was not a proper one for the business.

The plaintiff continued to insist on the terms of its letter, and that the defendant should return to the position assigned him. Between April 4th, 1889, and the beginning of this suit, the defendant appeared every day at the plaintiff's office and announced that he was ready to do any legitimate work, and was told by the plaintiff in reply that their written answer informed him of his duty and the services required of him.

There was nothing in the condition or heating of the room or the superintendency required of the defendant that justified him in refusing to superintend the preparation of the room, unless such service was outside the terms of the contract of employment and was not warranted thereby.

The plaintiff abandoned the further prosecution of fitting up any room for the McKay needle business soon after the receipt from the defendant of his letter of April 6th, 1889, and sold the McKay machines in May, 1889. The defendant was paid for his services under the contract only to April 1st, 1889.

So far as it is a question of fact, the committee finds that the work assigned to the defendant was within the terms of the contract, that he was not justified in his refusal to work as directed, and that his continued refusal was a breach

of the contract.    The allegations of the complaint were found to be substantially true.    It was also found that the plaintiff suffered no damage from the non-continuance of the defendant in its employment, but that it was benefited to a considerable extent thereby.    These in substance are all the material facts bearing upon the question before stated.

If the employment to which the defendant was assigned is within the terms of the contract of employment, then it must be conceded that the defendant and not the plaintiff has been guilty of a breach of the contract.    Under the circumstances presented by this record we are inclined to think this question is one of fact and not of law, but it is unnecessary to decide this matter in the case at bar, for in either aspect the question must be decided in favor of the plaintiff.

So far as the question is one of fact, it is answered in the affirmative and conclusively disposed of by the finding of the committee.    And if we regard it as a question of law, we think it must be answered in the same way.    And this too, even when we view the contract of employment in the light of all the evidence detailed in the remonstrance.    Indeed, if this evidence is taken into account, or the facts that are shown by it, it seems to strengthen the plaintiff's position.    But so far as the present case is concerned, the language of the contract itself is plain and unambiguous.

The plaintiff agreed to employ the defendant as a manager, superintendent or agent in its needle business, and to give him some such position or some kindred position in the business.    Such employment might be assigned to him anywhere in the United States or in Canada.    We think there can be no question but that the position and work assigned to the defendant on the first day of April, 1889, at Torrington, was that of a manager, superintendent or agent within the meaning of the contract of employment, for he was put in charge of certain men and was told to superintend them in the performance of certain work.    The only question seems to be, whether this position was that of a manager, superintendent or agent in the needle business within the fair intendment of the contract.

The case turns upon the meaning of the phrase "in their needle business," as used in the contract of employment. The contract itself does not, either expressly or by implication, define what the phrase means, nor does the record anywhere show that the parties used it with any special or clearly defined meaning.

Under these circumstances the plaintiff requested the defendant to close up the business at Cleveland, and come to Torrington to take charge of a room or department for the manufacture of McKay needles, using the machines brought from Cleveland. The defendant knew, of course, that the machines must be set up somewhere, that a room must be prepared for them, and that they must be put in working order. When this request was made to him the defendant made no objection, but at once signified his willingness to take charge of such a room. But the room required to be cleaned, repaired and got in order before the machinery could be set up and put in working condition. The defendant was told to superintend the fitting up of the room for the manufacture of McKay needles. He was also directed to supervise the getting of the room in order.

In a narrow sense, perhaps, this work of superintending the preparation of the room was not work in the needle business directly; but in the absence of anything to show that the words "needle business" were used in the contract in any narrow and clearly defined sense, we think the position assigned to the defendant on the first day of April, 1889, was an employment within the meaning of the contract as the parties must have understood it at the time when it was made. It was work of a very temporary nature, preliminary and necessary to the setting up of the machines. It was work that needed the supervision of some one, and of no one under the circumstances could it be more properly required than of the defendant.

Looked at in a common sense way this employment seems to come, under the facts found, as fairly within the terms of the contract as does the setting up of the machines themselves or the hanging of the shafting, which the defendant

seems to concede was part of his duty under the contract. Indeed the defendant himself at first seems to have considered that it was a part of his duty to supervise the work of getting the room in order, for he made no objection when he was assigned to the work, nor until the fourth day thereafter. We think it would be taking altogether too narrow a view of this contract of employment to hold that the work in question, under the facts found, did not come fairly within the terms of the contract. So that, whether we regard the principal question in the case as one of law or of fact, we must hold that the defendant committed a breach of the contract, and is not entitled to recover anything on his cross-bill.

We also think that the plaintiff is entitled to recover at least nominal damages. Under the facts disclosed by the record the law presumes that the plaintiff suffered some damage by the breach of the contract. That the committee has found that the plaintiff was benefited thereby can make no difference. The defendant claims in his brief to recover, for the three full days he worked in April, the sum of $16.66. He however made no claim of this kind in his cross-complaint, nor in any other part of his pleading, nor does any such claim appear to have been made in any way during the trial. Such a claim is therefore not before us upon the record.

We advise the Superior Court to overrule the remonstrance; to accept the report of the committee; to render judgment on the cross-bill against the defendant; and to render judgment in favor of the plaintiff for nominal damages.

In this opinion the other judges concurred.