RICHARD W. SOUCY *v.* JOHN WYSOCKI

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued February 5—decided March 31, 1953

*James C. Parakilas,* for the appellant (defendant).

*Francis P. Pallotti,* with whom was *George A. Silvester,* for the appellee (plaintiff).

BALDWIN, J. The plaintiff brought suit to recover damages for the wilful, wanton and unlawful killing of his dog. The defendant denied the killing as alleged and filed a counterclaim seeking damages for injury to his property caused by the dog. The court rendered judgment for the plaintiff on the complaint and the counterclaim, and the defendant has appealed.

The defendant seeks extensive corrections in the finding. His claims are without merit and the finding must stand. The facts may be stated as follows: The defendant had leased his fifty-two-acre farm in the town of Somers to the state, thirty-seven acres to be used as a public ground for hunting and trapping and fifteen acres around the house and the farm buildings to be a game sanctuary. The defendant was engaged in the business of raising pheasants as game birds. Wire-topped pens to confine the birds and fenced ranges for them were located adjacent to the buildings and within the sanctuary area. The game warden had erected signs designating the public hunting ground and the sanctuary area, but there was no fence marking the boundary line between the two.

The plaintiff owned a male English setter, one year and five days old. The dog was not licensed. By regulation of the state board of fisheries and game, the training of hunting dogs is permitted in the field

from August 1 in one year to March 31 in the next. The plaintiff had, on two prior occasions, brought the dog to the defendant's farm to train him. On one occasion the dog had caused some confusion among the pheasants. On October 8, 1951, the plaintiff, accompanied by the dog, entered the defendant's property at a point several hundred feet outside of the sanctuary area. A pheasant rose and the plaintiff ordered the dog to "get it." In following the pheasant, the dog crossed over into the sanctuary area and came up to one of the pens. The pheasants became excited and some, in the nearby ranges, flew out. When the plaintiff saw the dog enter the sanctuary area, he followed and called him. The defendant took a shotgun from a nearby shed and commenced to stalk the dog. As the dog was returning to the plaintiff in response to the plaintiff's call, and when he was well outside of the sanctuary area, the defendant raised his shotgun and took aim at the dog. The plaintiff pleaded with him not to shoot and offered to pay for any damage that the dog might have caused. Although the defendant heard the plaintiff, he shot and killed the dog. The dog had caused no damage to the defendant's property and no provable loss of pheasants. At the time he was shot, he was not pursuing or worrying the pheasants. Upon these facts, the trial court concluded that the killing of the dog was a wilful, wanton act which was not justified under the provisions of § 3405 of the General Statutes and rendered judgment for the plaintiff.

The defendant claims that the plaintiff cannot recover because his dog was not licensed as required by law. General Statutes § 3384. Section 3401 provides that "[a]ny person who shall steal [or] unlawfully kill or injure any licensed dog or any dog under the

age of six months shall [in addition to being subjected to a fine and imprisonment] be liable to the owner in a civil action." The plaintiff's dog was not licensed. For this reason, the plaintiff has no cause of action under the statute. See *Kolinski* v. *Klein,* 100 Conn. 127, 122 A. 914. The question is whether he can recover at common law. The complaint alleges that the defendant "wantonly, wilfully and unlawfully shot and killed the plaintiff's valuable English Setter dog, the property of the plaintiff." No citation of authority is required to demonstrate that ordinarily, at common law, if one injures the property of another wilfully, wantonly or negligently, he is liable in an action for damages. One can recover for injuries negligently inflicted upon his horse. See *Fritts* v. *New York & N.E. R. Co.,* 62 Conn. 503, 26 A. 347. This was not true of an action for damages for the killing of a dog, because the property interest in a dog was considered to be of a base and inferior kind and so "entitled to less regard and protection than property in other domestic animals." *Woolf* v. *Chalker,* 31 Conn. 121, 127; *Wilton* v. *Weston,* 48 Conn. 325, 336.

In the case of *Dickerman* v. *Consolidated Ry. Co.,* 79 Conn. 427, 429, 65 A. 289, the statute law relating to dogs was reviewed, and the court held (p. 431) that "no person has such property in an *unregistered* dog over six months old as will enable him to maintain an action for the value of such dog against one who unintentionally, but negligently, kills it." The court based this conclusion upon the reasoning that the statutes at that time made it a misdemeanor to keep or harbor an unlicensed dog, required the selectmen to make diligent search for such dogs and to cause those keeping or harboring them to be prosecuted, and further provided that unlicensed dogs

might be killed by constables and policemen, who would be entitled to a reward for so doing. The court cites *Sentell* v. *New Orleans & C. R. Co.,* 166 U.S. 698, 706, 17 S. Ct. 693, 41 L. Ed. 1169, to the effect that a property right in a dog is only a qualified one and that it "is purely within the discretion of the legislature to say how far dogs shall be recognized as property, and under what restrictions they shall be permitted to roam the streets." It also noted (p. 434) that it was not necessary to the disposition of the case to decide whether an action would lie for the wilful killing of an unlicensed dog.

In *Griffin* v. *Fancher,* 127 Conn. 686, 20 A.2d 95, the plaintiff had brought an action to recover damages for the killing of his dog by the negligent operation of the defendant's automobile. We said (p. 689) that "by our common law there is a right of action against one who negligently kills or injures [dogs], at least if they are properly registered." We pointed out (p. 690) that such an action would not fall within the provisions of § 3401 (then Cum. Sup. 1939, § 1119e) because the statute applied only to such killings as were wilful or so wanton as to be equivalent thereto. We held (p. 691), nevertheless, that the right to such a cause of action was implicit in § 3393 (then Cum. Sup. 1935, § 1370c), which recognizes fully the right of property in dogs. This statute is of decisive significance in the instant case. It reads: "All dogs are declared to be personal property and subject to larceny. License fees paid under the provisions of this chapter shall be in lieu of any tax on any dog of the value of one hundred dollars or less. Any person who steals a dog may be prosecuted under section 3401 or under section 8401." The wording of the statute is broad. It does not state that "all duly licensed" dogs shall be considered

to be personal property but that "all" dogs shall be. It provides for a prosecution for the theft of a dog not only under § 3401, which pertains to registered dogs only, but under § 8401, which pertains to the theft of personal property generally. It attaches to the right of property in dogs the usual incidents for the protection of personal property, including a recovery of damages under circumstances where such a recovery would be allowed for other kinds of personal property. *Griffin* v. *Fancher,* supra, 691. If a dog is personal property, as the statute declares, then one of the incidents attaching to ownership of a dog is the right to maintain an action at common law for wilfully, wantonly or negligently injuring or destroying it.

It may well be that in years gone by the common law did not regard a dog very highly. In England, they did not serve as food, as did cattle, sheep and hogs, or as beasts of burden, as did horses. They were maintained primarily for hunting and for the protection of their owner and his family. In such a role, it was desirable that they retain their natural characteristics, particularly their ferocity. The law held that they had no intrinsic value. 4 Bl. Comm. 236; see *Woolf* v. *Chalker,* 31 Conn. 121, 127. More recent authority tends toward the full recognition of property rights in dogs as in other domestic animals. *Scharfeld* v. *Richardson,* 133 F.2d 340, 341; *Lacker* v. *Strauss,* 226 Mass. 579, 580, 116 N.E. 236; *Baer* v. *Tyler,* 261 Mass. 138, 140, 158 N.E. 536; *Commonwealth* v. *Flynn,* 285 Mass. 136, 140, 188 N.E. 627; note, 145 A.L.R. 993; 2 Am. Jur. 693, § 7; 3 C.J.S. 1085. So to hold in no way abrogates our existing law with reference to the licensing of dogs or to the liability attached to owning or harboring them.

The defendant seeks to justify his act as one authorized by § 3405, which provides in part that "[a]ny owner . . . of any domestic animal or poultry . . . may kill any dog which he shall find pursuing or worrying any such domestic animal or poultry." Under this section, pheasants or other game birds securely confined and lawfully owned under the provisions of § 4879 are deemed to be poultry. Cum. Sup. 1951, § 709b. Whether the dog was "pursuing or worrying" the defendant's pheasants was a question of fact. *State* v. *Tripp,* 84 Conn. 640, 643, 81 A. 247. The trial court found that at the time the defendant shot the dog it was not "pursuing or worrying" the pheasants. When the defendant fired the shot, the dog was withdrawing from the area of the pens where the pheasants were kept, in response to a summons from the plaintiff, his master, and was coming to join the latter. Under these circumstances, the statute did not justify the killing. *Simmonds* v. *Holmes,* 61 Conn. 1, 9, 23 A. 702.

The defendant claims further that his act was not wilful and wanton. The facts found by the trial court justify a conclusion that it was. A wilful act is one that is "intentional, wrongful and without just cause or excuse." *Rogers* v. *Doody,* 119 Conn. 532, 534, 178 A. 51; *Sharkey* v. *Skilton,* 83 Conn. 503, 506, 77 A. 950. An act is wanton when it is so heedless as to be virtually equivalent to wilfulness. *Loethscher* v. *Campo,* 107 Conn. 568, 571, 141 A. 652; *Bordonaro* v. *Senk,* 109 Conn. 428, 431, 147 A. 136.

There is no error.

In this opinion the other judges concurred.