## John Green *v.* Gary Donroe et al.

Speziale, C. J., Parskey, Armentano, Shea and Covello, Js.

Argued November 12, 1981—decision released February 16, 1982

*Daniel V. Presnick,* for the appellant (plaintiff).

*Jonathan J. Einhorn,* with whom, on the brief, was *Stuart A. Margolis,* for the appellees (defendants).

SHEA, J. This appeal raises questions relating to the civil liability of one who, without having any intention to cause confinement, knowingly gives false information to t,he police which results in the arrest or detention of another. The plaintiff sought damages for false imprisonment in the first count and for a violation of his civil rights in the second count of the complaint. After a trial to the court judgment was rendered for the defendants. The plaintiff has appealed, claiming error in the disposition of both counts.

There is no dispute about the unusual circumstances giving rise to this suit and they may be summarized as follows: On January 26, 1978, the named defendant (hereinafter the defendant), who was at that time emotionally disturbed, shot himself in the shoulder while he was at his place of employment, a package store in West Haven. He contacted the local police and when they arrived he said that he had been robbed and shot by a black male wearing a green jacket and a blue hat, that his assailant had a medium skin tone, a round face, a medium build and was about five feet ten inches in

height. He lied to the police because he could not tolerate admitting that he had shot himself.

Wholly by chance the police picked up the plaintiff, a black man who was wearing a green jacket, and brought him to the defendant. When the defendant did not identify him, the plaintiff was released. He was detained by the police for approximately ten minutes and suffered no other harm as a result of the incident. In a subsequent interview with the police at the hospital the defendant admitted that he had shot himself because of an emotional disturbance resulting from a marital dispute and that his report of the robbery was a hoax. He was arrested and prosecuted for giving false information to the police.

The trial court concluded that, despite the unpleasant and embarrassing experience which the plaintiff suffered as a result of the defendant's wrongful conduct, the law afforded no relief. We agree with this conclusion.

## I

False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another. *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 499, 101 A.2d 500 (1953). Any period of such restraint, however brief in duration, is sufficient to constitute a basis for liability. 32 Am. Jur. 2d, False Imprisonment §14. The fact that there was no formal arrest of the plaintiff in this case and that he remained in the custody of the police for only ten minutes would not necessarily defeat his cause of action for false imprisonment. 1 Restatement (Second), Torts § 41.

False imprisonment comes within the category of intentional torts for which the remedy at common law was an action of trespass. *McGann* v. *Allen,* 105 Conn. 177, 188, 134 A. 810 (1926). "A person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." 32 Am. Jur. 2d, False Imprisonment § 9; 1 Restatement (Second), Torts § 35. The facts found by the trial court, which are not challenged, negate any intention on the part of the defendant to bring about the detention of the plaintiff, or, indeed, of anybody. See 1 Restatement (Second), Torts § 43. His contrivance of the bogus robbery was found to have been motivated solely by his embarrassment over shooting himself. The trial court was not compelled to infer from the description he gave to the police that he intended or expected any arrest to result. The cases relied upon by the plaintiff, in which liability was imposed for confinements resulting from false reports given to the police, are distinguishable in that there an intention to cause the arrests was established. *Jensen* v. *Barnett,* 178 Neb. 429, 134 N.W.2d 53 (1965); *Wehrman* v. *Liberty Petroleum Co.,* 382 S.W.2d 56 (Mo. App. 1964).

The plaintiff claims that the defendant should have been found liable for his reckless or, at least negligent, conduct in furnishing false information to the police in violation of § 53a-180 (a) (3),[1] which

---

[1] General Statutes § 53a-180 provides in part as follows: "(a) A person is guilty of falsely reporting an incident when, knowing the information reported, conveyed or circulated to be false or baseless, he . . . (3) gratuitously reports to a law enforcement officer or agency the alleged occurrence of an offense or incident which did not in fact occur; or an allegedly impending occurrence of an offense

imposes a criminal penalty for such an act. Recklessness, in the sense of a conscious disregard of a substantial and unjustifiable risk of harm; see General Statutes § 53a-3 (13); is sometimes equated with intentional conduct in terms of legal consequences. *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 490, 234 A.2d 825 (1967); *Soucy* v. *Wysocki,* 139 Conn. 622, 628, 96 A.2d 225 (1953); *Bordonaro* v. *Senk,* 109 Conn. 428, 432–33, 147 A. 136 (1929). In the context of false imprisonment the label of "reckless" fairly characterizes a state of mind amounting to knowledge that confinement is substantially certain to result from the wrongful conduct but not attaining the proportions of an actual intention to bring it about. Nothing less than this rather extreme brand of recklessness will substitute for the standard requirement of intention in false imprisonment cases. "It is not enough that the actor realizes or should realize that his actions involve a risk of causing a confinement, so long as the likelihood that it will do so falls short of a substantial certainty." 1 Restatement (Second), Torts § 35, comment h. The facts found by the trial court do not indicate that the defendant's false report created a virtual certainty that someone would be arrested or that the defendant must have expected such a result. Where there is no intention to cause the confinement of a person or the equivalent variety of recklessness, there is no liability for an act result-

or incident which in fact is not about to occur; or false information relating to an actual offense or incident or to the alleged implication of some person therein."

The plaintiff also claims a violation of General Statutes § 53a-157 which applies to false statements in writing under oath or under a notice of punishableness. The record, however, does not present a sufficient basis for such a claim. Any additional statutory violation would be immaterial to our consideration of the case.

ing in a merely transitory detention which might otherwise sustain an action for false imprisonment. Id., § 35 (2).

Negligent conduct which results in a confinement of sufficient consequence to constitute the actual damage required to maintain a negligence action[2] is a sufficient basis for imposing liability. 1 Harper & James, Law of Torts § 3.7; Prosser, Law of Torts (4th Ed.) § 30. In *Collins* v. *City National Bank & Trust Co.,* 131 Conn. 167, 38 A.2d 582 (1944), a plaintiff whose check was negligently dishonored by his bank was allowed to recover compensatory

---

[2] Notwithstanding the implication of the partially dissenting opinion, none of our cases has held that a plaintiff may prevail in a negligence action without alleging and proving actual damage. The dissent concedes that this was the rule at common law, as indeed it was. 3 Blackstone's Commentaries, c. 8, pp. 122–23; 3 Stephen's Commentaries on the Laws of England (15th Ed.) c. 7, p. 390. No contrary authority is cited and the common law rule, ancient as it may be, has been approved by contemporary commentators. 1 Harper & James, Law of Torts § 3.7; Prosser, Law of Torts (4th Ed.) § 30.

The statement, "every invasion of a legal right imports damage," appears in several early cases involving intentional acts, some of which also relate to an intrusion upon an interest in real estate. *Beattie* v. *New York, N.H. & H. R. Co.,* 84 Conn. 555, 559, 80 A. 709 (1911) (breach of contract); *Dewire* v. *Hanley,* 79 Conn. 454, 458, 65 A. 573 (1907) (obstruction of a right of way); *Brett* v. *Cooney,* 75 Conn. 338, 341, 53 A. 729 (1902) (fraud); *Watson* v. *New Milford Water Co.,* 71 Conn. 442, 451, 42 A. 265 (1899) (diversion of a stream); *Excelsior Needle Co.* v. *Smith,* 61 Conn. 56, 65, 23 A. 693 (1891) (breach of contract); *Nicholson* v. *New York and New Haven R. Co.,* 22 Conn. 74, 84 (1852) (trespass upon land); *Parker* v. *Griswold,* 17 Conn. 288, 304–305 (1845) (diversion of a stream). In *Hageman* v. *Freeburg,* 115 Conn. 469, 471–72, 162 A. 21 (1932), a personal injury suit based upon negligence which is relied upon in the dissent, the full quotation in which this declaration appears is as follows: "The bruises, contusions and physical injuries themselves would be the basis of awarding some damages entirely apart from the resulting suffering; every invasion of a legal right imports damage and an actual physical injury resulting from the violation of the right of personal security entitles a plaintiff to something more than merely nominal damages." It is clear that

damages when he had been arrested on a charge of obtaining money by false pretenses, jailed for two hours, compelled to post a bond for his release, and injured in reputation. Incarceration of even brief duration has been found sufficient to fulfill the requirement of actual damage. *Weaver* v. *Bank of America National Trust & Savings Assn.,* 30 Cal. Rptr. 4, 380 P.2d 644 (1963) ; *Mouse* v. *Central Savings & Trust Co.,* 120 Ohio St. 599, 167 N.E. 868 (1929). The complaint in this suit, however, cannot be read so broadly as to include such a cause of action, since it contains no allegation of negligence or damages suffered as a result of the plaintiff's misdeed in "knowingly and wilfully" making a false

"bruises, contusions and physical injuries" constitute actual damage and the inclusion of the aphorism was pure dictum. Similarly, in *Urban* v. *Hartford Gas. Co.,* 139 Conn. 301, 306, 93 A.2d 292 (1952), it was repeated in a case which held simply that the negligent infliction of emotional distress which resulted in the flare-up of an arrested diabetic condition of the plaintiff presented a viable cause of action. It also appears that in the cases cited concerning a negligent assault and battery, none of which contain the statement referred to, there was no question but that some actual damage had been sustained. *Sansone* v. *Bechtel,* 180 Conn. 96, 99, 429 A.2d 820 (1980) ; *Russo* v. *Porga,* 141 Conn. 706, 708–709, 109 A.2d 585 (1954) ; *Lentine* v. *McAvoy,* 105 Conn. 528, 530–31, 136 A. 76 (1927).

Although the rule making actual damage an element of a cause of action in negligence may have originated in the common law distinction between trespass and trespass on the case, we are not inclined to obliterate the distinction between intentional and unintentional conduct in terms of legal consequences which it serves to implement. Where the plaintiff's right has been intentionally invaded, its vindication in a court of law and the award of nominal and even exemplary damages serves the policy of deterrence in a real sense. It is difficult to imagine what purpose would be furthered by permitting anyone who is jostled in a crowd or otherwise suffers some unintended contact with his person or injury to his dignity to set in motion the judicial machinery necessary for a recovery of nominal damages. See 1 Restatement (Second), Torts § 18, comment g. That judges and juries have more important business to occupy them is as true today as it was in ancient times when the rule originated. There is nothing arcane about the wisdom of not cluttering the courts with trivia.

statement. "A plaintiff may not allege one cause of action and recover upon another." *Malone* v. *Steinberg,* 138 Conn. 718, 721, 89 A.2d 213 (1952).

## II

In the second count of his complaint the plaintiff relies upon 42 U.S.C. § 1983 which provides in part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, or any State . . . subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." For liability to be imposed under the statute it is essential to prove that the actions complained of were taken "under color" of law. *Adickes* v. *S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) ; *Henig* v. *Odorioso,* 385 F.2d 491, 494 (3d Cir. 1967), cert. denied, 390 U.S. 1016, 88 S. Ct. 1269, 20 L. Ed. 166 (1968). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States* v. *Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941). "To act 'under color' of law does not require that the (defendant) be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *United States* v. *Price,* 383 U.S. 787, 794, 86 S. Ct. 1152, 16 L. Ed. 2d 267 (1966).

In this case the lack of any intention on the part of the defendant to bring about any arrest or detention would preclude a finding that he had acted in concert with the police in causing the plaintiff to be

detained. Since he was not a willing participant in the deprivation of the constitutional rights claimed by the plaintiff, his wrongful conduct was not "under color" of state law and he is not liable under § 1983.

There is no error.

In this opinion SPEZIALE, C. J., ARMENTANO and COVELLO, Js., concurred.

PARSKEY, J. (concurring in part and dissenting in part). Except for its discussion of negligent conduct I have no quarrel with the court's opinion. In fact, because the complaint alleges intentional rather than negligent conduct, this would furnish a sufficient basis for rejecting a recovery based on a cause of action sounding in negligence. But when the majority categorically states that in order to recover in a negligence action the plaintiff must allege and prove actual damage, it is at that point that we part company because this statement is contrary to Connecticut law.

In *Hageman* v. *Freeburg,* 115 Conn. 469, 162 A. 21 (1932), a case involving a negligence action for personal injuries, speaking through Chief Justice Maltbie, we stated (pp. 471–72) "every invasion of a legal right imports damage." We followed this holding in *Urban* v. *Hartford Gas Co.,* 139 Conn. 301, 93 A.2d 292 (1952), which also involved a negligence action for personal injuries, with the further observation (pp. 306–307) that "[t]he wrong to Mrs. Urban became actionable when her legal right was invaded by the intentional or negligent violation of duty on the defendant's part." In neither case was a showing of actual damage made an essential requirement of the negligence

action.[1] That this was not an oversight can be gleaned by the comment by Toelle in "The Urban Case," 27 Conn. B.J. 74, 79 (1953) and the oblique footnote in 2 Harper & James, Torts § 25.1, n.4. *Hageman* and *Urban* state the common law of this state. Until and unless they are overruled, if stare decisis represents anything more than flash paper, they must be followed, the ancient common law and the pronouncements of eminent academicians to the contrary notwithstanding.

An invasion of a person's legal rights, whether occasioned by trespass or negligence, by intentional or unintentional conduct, should have the same legal consequences. If invasions of one's rights by assault and battery without actual damages are actionable; *Petrucelli* v. *Catapano,* 107 Conn. 122, 123, 139 A. 634 (1927); and if invasions by negligent assault and battery are also actionable; *Sansone* v. *Bechtel,* 180 Conn. 96, 99, 429 A.2d 820 (1980); *Russo* v. *Porga,* 141 Conn. 706, 708–709, 109 A.2d 585 (1954); *Lentine* v. *McAvoy,* 105 Conn. 528, 530–31, 136 A. 76 (1927); then what manner of legal logic excludes invasions by other negligent conduct?

The fact is the different treatment of intentional and negligent acts in the old common law is due neither to logic nor experience but rather to procedural history. Actions of trespass were treated differently from actions of trespass on the case. As Holmes cogently observed in The Common Law (Howe Ed.) (p. 64) "[i]n place of a theory of tort, we have a theory of trespass. And even within

[1] The discussion in the majority opinion (footnote 2) of trivial invasions is very much beside the point. This is not that case. This case involves a claim of invasion of one's rights resulting in detention. This is a sufficiently serious invasion to import damage without a further showing of actual damage.

that narrower limit, precedents of the time of the assize and *jurata* have been applied without a thought of their connection with a long forgotten procedure." While legal history should not be sloughed off, neither should it command our slavish obedience. To replace our own soundly reasoned law on the basis of ancient pronouncements founded on arcane common law concepts of forms of action is to replace reason with rote.

With the exceptions noted I respectfully record my concurrence.