[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#103)
The plaintiff, Karen L. Carr, instituted this action against the defendants, The Devereux Foundation, Inc., Gary Fitzherbert, Richard Roe and Jane Doe, to recover damages she allegedly sustained as a result of the defendant's termination of her CT Page 10252 employment. In an eight count complaint, the plaintiff alleges claims for breach of contract, a violation of General Statutes Sec. 31-51q, wrongful termination, defamation, negligent and intentional infliction of emotional distress, false imprisonment and a violation of General Statutes Sec. 31-290a. The defendants Fitzherbert and Devereux now move to strike the second, fourth, fifth, sixth and seventh counts of the complaint.
In support of their motion, the defendants filed a memorandum of law. The plaintiff timely filed a memorandum in opposition. The defendants also filed a reply memorandum.
DISCUSSION
"A motion to strike challenges the legal sufficiency of a pleading." Mingachos v. CBS Inc., 196 Conn. 91, 108, 491 A.2d 368
(1985). "The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them." Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989). The court is to construe the facts alleged in a manner most favorable to the pleader. Rowe v. Godou, 209 Conn. 273,278, 550 A.2d 1073 (1988). All well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. Amodio v. Cunningham, 182 Conn. 80, 82-83, 438 A.2d 6
(1989). A motion to strike "does not admit legal conclusions or the truth or accuracy of opinions stated in pleadings." Mingachosv. CBS, Inc., supra, 196 Conn. 108. If the facts provable under the allegations would support a cause of action, the motion to strike must fail. Ferryman v. Groton, supra, 212 Conn. 142.
 I.
The defendants move to strike the second count alleging a violation of General Statutes Sec. 31-51q because the plaintiff's speech is not constitutionally protected and because the speech substantially and materially interfered with her working relationship with the defendant Devereux.
General Statutes Sec. 31-51q provides that an employer cannot discharge an employee in retaliation for the exercise of their free speech rights as guaranteed by both the United States and Connecticut Constitutions, except in limited circumstances. General Statutes Sec. 31-51q. In order to show that constitutionally protected rights are at issue under Sec. 31-51q, a plaintiff must allege that she was exercising her free speech CT Page 10253 rights as a citizen with respect to a matter of public concern.Lund v. Stern Company, Inc., 13 Conn. L. Rptr. 77, 78 (November 3, 1994, Stengel, J.). "The issue to be addressed is not simply whether the subject matter of the employee's complaint touches on a matter of public concern generally; the issue is whether acting as he did, an employee was acting as a citizen attempting to speak out on a public issue, or whether the employee was instead attempting to resolve a private dilemma relating to employment." (Internal quotation marks omitted.) Id., quoting Bakelman v.Paramount Cards, Inc., 12 Conn. L. Rptr. 96, 97 (June 1, 1994, Lavine, J.).
In this case, the plaintiff has not alleged in the second count facts sufficient to demonstrate that she was attempting to speak out on a public issue. The underlying speech involved in this count of the complaint concerns "an allegation that the plaintiff had spread rumors about the defendant Fitzherbert." The plaintiff argues that to the extent that she may have spread these rumors, her purpose could have been to express her concern over sexual harassment in the work place. The allegations of this count, however, contain no allegations that the plaintiff engaged in speech expressing her concern over sexual harassment in the work place. In fact, the second count contains no allegations that can be construed as concerning any attempt by the plaintiff to speak out as a citizen on a public issue. Therefore, the motion to strike the second count is granted.
 II.
The defendants move to strike the fourth count alleging wrongful termination in violation of public policy because there is no factual basis that the alleged public policy violation caused the termination. The fourth count alleges that after returning to work from a paid suspension, the plaintiff learned that she had been separated from her employment by what the defendant Devereux characterized as her "voluntary resignation." The plaintiff claims that this characterization was false because she did not voluntarily resign, but instead was terminated. She further alleges that the termination was wrongful in that by characterizing her termination as a "voluntary resignation," the defendant sought to render her ineligible for unemployment compensation benefits and thereby avoid liability for payments on such benefits in violation of the public policy reflected in General Statutes Sec. 31-273(d). That statute prohibits knowingly providing false information for use in determining unemployment CT Page 10254 compensation eligibility.
The defendants contend that even if the defendants' actions contravened public policy, this violation could not have caused the plaintiff's termination. In response, the plaintiff relies on this court's decision in Yates v. Charlotte Hungerford Hospital, Superior Court, Judicial District of Litchfield, No. 056115 (November 27, 1991, Pickett, J.). In Yates, the defendant terminated the plaintiff on the ground of "lack of work," but three weeks later hired another individual to fill the plaintiff's position. The defendant moved to strike a claim of breach of the covenant of good faith and fair dealing, arguing that the plaintiff failed to allege a recognized violation of public policy. The court, however, recognized this state's "public policy against knowingly providing false information for use in determining eligibility for unemployment compensation" as stated in Sec. 31-273(d). The issue of whether a causal connection is required between the public policy violation and the plaintiff's termination was never raised or addressed inYates. Significantly, on a motion to strike the court is limited to the grounds specified in the motion; Meredith v. PoliceCommission, 182 Conn. 138, 140, 438 A.2d 57 (1980); and in Yates
this issue was never raised.
In Sperry v. Post Publishing Company, 6 CSCR 512 (May 1, 1991, Katz, J.), however, the issue of whether a causal connection is required between the public policy violation and the termination was addressed under similar facts as the present case. In Sperry, the plaintiff alleged that the defendant's false statement to the Connecticut Compensation Commission that the plaintiff's termination was for "lack of work" contravened this state's public policy. Id., 513. The court, however, did not agree that such a public policy violation supported a cause of action for wrongful termination:
 While the statement in issue may be evidence of wrongful termination, it does not constitute a separate and distinct cause of action. . . . [T]he public policy against knowingly providing false information did not cause or result in the plaintiff's wrongful discharge. It is perhaps merely evidence that the termination was wrongful because of its falseness. Similarly, the lying in issue did not cause or result in the termination, but rather is perhaps evidence of its wrongfulness. CT Page 10255
Id.
The facts alleged in the fourth count are analogous to those in the Sperry case. These facts fail to show how the alleged public policy violation caused or resulted in the plaintiff's termination. In Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,427 A.2d 383 (1980), the Connecticut Supreme Court carved out an exception to the employment-at-will rule where "a former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Id., 475. The fourth count fails to allege such an improper reason for her termination. Therefore, the motion to strike the fourth count is granted.
 III.
The defendants argue that the fifth and sixth counts should be stricken because Connecticut's Workers' Compensation Act, General Statutes Sec. 31-284 et seq., provides the exclusive remedy for the plaintiff's claims of negligent and intentional infliction of emotional distress. The plaintiff argues that negligently and intentionally inflicted mental distress caused by the manner of the discharge from employment is not work related and therefore is not subject to the exclusivity provision of the act. Additionally, the plaintiff claims that the injury alleged in this count is not a "personal injury" or "injury" as defined by the act, and, therefore, is not subject to the act's exclusivity provision.
In reply to the plaintiff's arguments, the defendants argue that the plaintiff's claims are not related solely to their discharge, but also to acts occurring prior to the discharge and during the course of their employment. They further argue that the amendment to the act merely provided that emotional distress injuries are no longer compensable under the act, but they are still injuries in the course of employment subject to the act's exclusivity provision. The defendant also contends that the plaintiff has a remedy under Sec. 31-290(a) and should not be permitted to also seek damages at common law.
In Stepney v. Devereux Foundation, Superior Court, Judicial District of Litchfield, No. 065885 (July 17, 1995, Pickett, J.), this court addressed the issue of whether due to recent amendments to the Workers' Compensation Act a plaintiff could CT Page 10256 pursue common law remedies for mental or emotional impairments. The court specifically addressed Public Act 93-228, which amended the statutory definition of "person injury" or "injury" and presently is embodied in General Statutes Sec. 31-275(16)(B)(ii).
 Section 31-275(16)(B)(ii) clearly and unambiguously provides that a mental or emotional impairment that does not arise from a physical injury or occupational disease is not considered a physical injury or injury under the act. This section limits the act's coverage, which has previously been described as "necessarily broad in scope." Mingachos v. C.B.S., Inc., supra, 196 Conn. 99. Section 31-275(16)(B)(ii) also effectively overrules Crochiere v. Board of Education, supra, 227 Conn. 333, which held that "mental disorders, even if not accompanied by physical trauma to the body, constitute an injury under the [Workers' Compensation Act]." Id., 363. The amended definition provides that such an injury is not compensable or covered under the act. Therefore, a claim arising out of a mental or emotional impairment is not subject to the act's exclusivity provision since it does not arise "out of personal injury" as defined by the act. Sec. 31-284(a). Accordingly, an employee may bring a common-law tort action against his employer for a mental or emotional impairment arising out of and in the course of employment that does not arise from physical injury or occupational disease.
 At least one commentator noted this interpretation of Section 31-275(16)(B)(ii) by stating that the act's amended definition of personal injury or injury "has opened the door to the real likelihood that mental-mental stress claims previously handled under [the Act] will now be resolved in the civil jury system." A. Sevarino, Connecticut Workers' Compensation After Reforms
(1994), pp. 154-55. This interpretation of the effect of this amendment is both rational and in keeping with the remedial purpose of the statute. The Workers' Compensation Act compromises an employee's right to a common-law tort action for work related injuries in return for relatively CT Page 10257 quick and certain compensation. Mingachos v. C.B.S., Inc., supra, 196 Conn. 97. When an injury is expressly excluded from coverage under the act, the employee's right to pursue a common-law remedy for the injury is no longer compromised. The exclusivity provided by the workers' compensation statute is a quid pro quo, and a right of action should only be deemed taken away from an employee where something of value has been put in its place. 2 A. Larson, Larson's Workmen's Compensation (Desk Edition 1991), Sec. 65.10, pp. 12-1 — 12-3.
 The interpretation for which the defendant argues would bring about the anomalous result that the employee has compromised away his or her right to pursue a common-law remedy in return for no compensation under the act. The legislature, however, is presumed to have intended a just and rational result. Dos Santos v. F.D. Rich Construction, Inc., supra, 233 Conn. 21. If an employee does not have a remedy under the workers' compensation statute for a mental or emotional impairment that does not arise from physical injury or occupational disease, it is only just and rational that the employee be permitted to pursue a remedy for such an impairment at common-law.
Stepney v. Devereux Foundation, supra. This rationale applies equally to the plaintiff's claims in this case alleging negligent and intentional infliction of emotional distress. Therefore, the defendants' motion to strike the fifth and sixth counts is denied.
 IV.
The defendants move to strike the seventh count of the complaint alleging false imprisonment because the plaintiff was not confined as a matter of law and the plaintiff was not conscious of the confinement. The defendants contend that the plaintiff must allege more than mere mental compulsion and that the plaintiff was conscious of the confinement. Without these allegations, the defendants contend that the seventh count is legally insufficient.
False imprisonment is the unlawful restraint by one person CT Page 10258 of the physical liberty of another. Berry v. Loiseau,223 Conn. 786, 820, 614 A.2d 414 (1992); Green v. Donroe,186 Conn. 265, 267, 440 A.2d 973 (1982); Felix v. Hall-BrookeSanitarium, 140 Conn. 496, 499, 101 A.2d 500 (1953). "Any period of such restraint, however brief in duration, is sufficient to constitute a basis for liability. 32 Am.Jur.2d, False Imprisonment 14." Green v. Donroe, supra. "`To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly.'" Berry v.Loiseau, supra, quoting, Lo Sacco v. Young, 20 Conn. App. 6, 19,564 A.2d 610, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989). "In the case of false imprisonment there usually must be more than mental compulsion. There must be the threat of present (not future) force." D. Wright J. Fitzgerald, Connecticut Law of Torts (3d ed.) Sec. 12, p. 15.
The plaintiff has sufficiently alleged more than mere mental compulsion. The plaintiff alleges that she was restrained against her will by through the exercise of implied force. The actual use of force is not necessary to create liability for the false imprisonment; instead, the use of an implied threat of force may constitute an imprisonment. 32 Am.Jur.2d False Imprisonment Sec. 17. The plaintiff, however, must also show that she was aware or conscious of the confinement. D. Wright J. Fitzgerald, Connecticut Law of Torts (3d ed.) Sec. 12, p. 15; 32 Am.Jur.2d, supra, Sec. 11. The plaintiff has failed to allege that she was aware or conscious of the confinement. Thus, the defendants' motion to strike the seventh count is granted.
 V.
In conclusion, the defendants' motion to strike the second, fourth and seventh counts is granted. The motion to strike the fifth and sixth counts is denied.
PICKETT, J.