*Martinsky v. City of Bridgeport,*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 6th day of December, two thousand and twelve.

PRESENT:
    JOHN M. WALKER, JR.,
    DEBRA ANN LIVINGSTON,
    CHRISTOPHER F. DRONEY

            *Circuit Judges*.

_____

WILLIAM C. MARTINSKY,

            *Plaintiff-Appellant*,


    -v.-                                          No. 11-4173-cv

CITY OF BRIDGEPORT, CHARLES PARIS, FRANK SANTORA,
JAMES VIADERO, AND JAMES HONIS,

            *Defendants-Appellees*.

_____

                        KATHRYN EMMETT (Christine Caulfield, *on the brief*),
                        Emmett & Glander, Stamford, Connecticut, *for Plaintiff-Appellant*.

                        ARTHUR C. LASKE III (Betsy A. Edwards, *on the brief*),
                        Office of the City Attorney, Bridgeport, Connecticut, *for Defendants-Appellees City of Bridgeport, Frank Santora, James Viadero, and James Honis*.

                        John P. Bohannon, Jr., Fairfield, Connecticut, *for Defendant-Appellee Charles Paris*.

1

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the judgment of the District Court entered September 7, 2011 is **AFFIRMED**.

Plaintiff-Appellant William C. Martinsky ("Martinsky") appeals from a decision and order of the United States District Court for the District of Connecticut granting Defendants-Appellees' motion for summary judgment on all claims. On appeal, Martinsky argues that triable issues of fact exist with respect to both his false arrest claims arising under Connecticut common law and 42 U.S.C. § 1983 and his disability discrimination claims arising under the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), CONN. GEN. STAT. § 46a-51 *et seq.*. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.

We review a district court's grant of summary judgment *de novo*, "drawing all factual inferences in favor of the non-moving party." *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011). "Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). A defendant is entitled to summary judgment where "the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (internal citation and quotation marks omitted).

\* \* \*

1. *False Arrest Claims*

Martinsky alleges that Defendants-Appellees Charles Paris ("Paris"), Frank Santora ("Santora"), James Viadero ("Viadero"), and James Honis ("Honis") subjected him to a false arrest,

2

violating his Fourth Amendment rights, when they arrested him for moving items from a basement storage area into a separate locked area of the basement underneath the Savoy Bar and Grill Restaurant ("the Savoy"), a restaurant he previously owned with Paris. The District Court assumed *arguendo* that Martinsky was arrested and seized within the meaning of the Fourth Amendment. It then held that the Defendants-Appellees were entitled to summary judgment because, at the time, probable cause existed for them to believe Martinsky had committed larceny. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (noting probable cause is a complete defense to an action for false arrest). Martinsky argues on appeal that the District Court erred principally by ignoring disputes over material facts and by drawing inferences in the Defendants-Appellees' favor. We disagree. Assuming *arguendo* that the alleged detention prior to the issuance of the summons constituted an arrest, Martinsky's appeal fails.

a. *Santora, Viadero, and Honis*

We agree with the District Court that, viewing the facts in the light most favorable to Martinsky and drawing all inferences in his favor, no genuine dispute exists as to whether Santora, Viadero, and Honis had probable cause. The parties do not dispute that Martinsky, while on duty and in uniform, sought entry into the Savoy when its owners were not present and without seeking their permission. He then took items out of the Savoy's storage space, transferred them to a separate locked area to which the Savoy's owners did not have access, and then covered the items, thus concealing them. The officers confirmed this sequence of events at the scene. They examined the basement, talked to Martinsky, and interviewed Mike Falcigno, the employee of a nearby business, who gave Martinsky access to the basement. Falcigno confirmed the sequence of events. Based on these facts, the officers were reasonably suspicious that Martinsky intended to wrongfully obtain another's property. *See* CONN. GEN. STAT. § 53a-119.

3

Santora, Viadero, and Harris were also entitled to rely on the statements of Paris, interviewed at the scene. Paris claimed the Savoy owned the items and denied that Martinsky had permission to access the basement. Officers may generally rely on information received from putative victims to establish probable cause. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." (internal quotation marks and citations omitted)). Nor did Martinsky's protestations that he owned the items, given the surrounding circumstances, preclude the officers from relying on Paris's statements to the contrary.

Despite the evidence supporting the officers' determination of probable cause, Martinsky argues that the Defendants-Appellees lacked probable cause because their investigation failed to exhaust all possible alternatives. He contends that the officers gave insufficient weight to his ownership claims and that they should have verified ownership against an inventory list from the sale of his interest in the Savoy before arresting him. However, police officers are not required conclusively to eliminate all alternative explanations offered by a suspect where the evidence reasonably indicates that the suspect may have committed a crime. *See*, *e.g.*, *Krause v. Bennett*, 887 F.2d 362, 371-72 (2d Cir. 1989) (holding that officer had probable cause to arrest suspect for possession of stolen property even though suspect had given officer contact number of person who might have exonerated suspect). Because the totality of the circumstances was sufficient to allow a reasonable police officer to conclude that Martinsky had committed larceny, it is "'of no consequence that a more thorough or more probing investigation might have cast doubt upon' the situation." *Id.* (quoting *United States v. Manley*, 632 F.2d 978, 984 (2d Cir. 1980)).

b. *Paris*

Martinsky next argues that, even if the other officers had probable cause to arrest Martinsky,

4

a reasonable jury could find that Defendant-Appellee Paris lacked probable cause because he knew that some of the items removed by Martinsky, specifically two circus posters, did not belong to the Savoy. However, to prevail on his false arrest claim against Paris, Martinsky must show specifically that Paris unlawfully restrained his physical liberty. *See Green v. Donroe*, 440 A.2d 973, 974 (Conn. 1982) ("[F]alse[] arrest is the unlawful restraint by one person of the physical liberty of another."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). Here, the record is clear that Paris never directly detained Martinsky and lacked the authority to steer the investigation to such an end. *Cf. Provost v. City of Newburgh*, 262 F.3d 146, 154-55 (2d Cir. 2001) (noting § 1983 liability requires intentional participation in the unconstitutional conduct and may include "ordering or helping others to do the unlawful acts, rather than doing them him-or herself"). Though Paris stated that he reported the incident pursuant to his duties as a police officer, there is no evidence that any official involvement of Paris continued after this point. Indeed, once Paris called in the complaint to dispatch, the record is undisputed that other more senior officers appeared on the scene; conducted the investigation, treating Paris as a witness; and ultimately made the decision to detain Martinsky. Hence, even assuming *arguendo* that material issues of fact exist as to whether Paris had probable cause, Martinsky's claim fails. *See, e.g.*, *Lo Sacco v. Young*, 564 A.2d 610, 612, 618 (Conn. App. Ct. 1989) (finding complaint insufficient to state cause of action for false imprisonment where police arrived in response to a call from one of the defendants, "took statements from the parties, and arrested the plaintiff for assault"); *see also Russo*, 479 F.3d at 204 (noting that the standards for false arrest and false imprisonment are the same under Connecticut law).

2. *ADA Disability Discrimination Claim*

Martinsky also appeals the District Court's grant of summary judgment to his former employer, the City of Bridgeport, on his claims of discrimination based on disability. "[A] prima facie case of disability discrimination arising from a failure to accommodate" requires a showing that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96-97 (2d Cir. 2009) (internal quotation marks omitted). The plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment." *Id.* at 97.

We assume for the purpose of this analysis that a reasonable juror could find that Martinsky had a disability under the ADA and that a reasonable juror could conclude that patrol was not an essential function of his position. We nonetheless affirm the District Court's conclusion that there was no disability discrimination on the basis that Bridgeport never refused Martinsky an accommodation because Bridgeport did not know of Martinsky's disability (which the District Court assumed *arguendo* in determining that the offer of a training post constituted a reasonable accommodation).[1]

In December 2007, Martinsky asked to remain posted to booking indefinitely, explaining not that he had a disability, but that he wanted to avoid contact with Defendants, as he feared for his safety and planned on bringing a civil action against them. Martinsky never informed anyone at the

---

[1] Martinsky confirmed at oral argument that he was denied an accommodation in November - December 2007; not in February 2008 after Bridgeport arguably had notice of his disability.

6

Bridgeport Police Department that he needed to remain in booking because of a medical condition; indeed, at that point in time, Martinsky had never sought treatment or diagnosis of a disability. Nor is there evidence in the record that Martinsky's mental disability was so obvious that it would be reasonable to infer that his employer knew of the disability. A reasonable juror could not conclude that Martinsky's requests – phrased as a desire to avoid specific individuals – served as notice to Bridgeport that Martinsky needed a reasonable accommodation for a mental disability.

Because Bridgeport never had notice of Martinsky's disability, Captain Porter's refusal to permit Martinsky to remain in booking – for the legitimate reason that additional officers were needed on patrol – did not constitute a denial of a reasonable accommodation. Because an indefinite posting to booking was the only accommodation Martinsky requested,[2] he fails to state the fourth element of a *prima facie* case of denial of reasonable accommodations.

3. *CFEPA Discrimination Claim*

Under the Connecticut Fair Employment Practices Act, it is prohibited for an employer to "refuse to hire or employ or to bar or discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . present or past history of mental disability, intellectual disability, learning disability or physical disability." CONN. GEN. STAT. § 46a-60(a)(1). While the CFEPA defines disability more broadly than the ADA, *see Beason v. United Techs. Corp.*, 337 F.3d 271, 276-79 (2d Cir. 2003) ("[T]he case law on point, although not extensive, uniformly confirms our belief that the CFEPA's definition of physical disability is broader than the ADA's."), the ADA and the CFEPA

---

[2]In his appellate brief, Martinsky argues that there is no evidence that he would have been able to perform in any job in November 2008, even though he requested a posting to the canine unit at that time. Accordingly, we do not consider whether a posting to the canine unit would have constituted a reasonable accommodation (or whether Bridgeport's subsequent offer to post him to the training unit was an acceptable counter-offer).

apply the same standards for reasonable accommodation, *Curry v. Allan S. Goodman, Inc.*, 944 A.2d 925, 933-35 (Conn. 2008) (noting that the CFEPA "implicitly imposes the same duty on employers to provide reasonable accommodation to disabled individuals that expressly is required under the federal ADA").  Because Bridgeport did not fail to provide a reasonable accommodation under the ADA, it likewise did not violate CFEPA.

We have reviewed Martinsky's remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the District Court is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk