7 F.3d 377
 Charles CAIN, Executor of the Estate of Diane Cain and
Charles Cain in his own right, Appellants
v.
DARBY BOROUGH; Darby Borough Police Department; Robert
Boyden; John Chappelle; Cory Kramer; John Doe; Yeadon
Borough; Yeadon Borough Police Department; Robert Frazier,
Sergeant; John Doe; Colwyn Borough; Colwyn Borough Police
Department; John Doe; Arthur Raffaele; Salvatore
Nusaforo, Appellees.
 No. 91-1897.
 United States Court of Appeals,
Third Circuit.
 Argued May 1, 1992.
Reargued In Banc May 11, 1993.
Decided Oct. 18, 1993.
 
 Edward J. Devine (argued), Robert J. Casey, Mylotte, David & Fitzpatrick, Philadelphia, PA, for appellants.
 Jeffrey P. Hoyle (argued), William F. Holsten, II, Holsten & White, Media, PA, for appellees.
 Eric B. Henson (argued), Ellen M. Briggs, Hoyle, Morris & Kerr, Stefan Presser, ACLU of Pennsylvania, David Rudovsky, Kairys & Rudovsky, Philadelphia, PA, for amicus curiae American Civ. Liberties Union of Pennsylvania.
 William H. Ryan, Jr., Dist. Atty., Dennis C. McAndrews, Deputy Dist. Atty. (argued), Media, PA, for amicus curiae Office of Dist. Atty., Delaware County, PA.
 Argued May 1, 1992.
 Before: BECKER, NYGAARD and HIGGINBOTHAM*, Circuit Judges.
 Reargued In Banc May 11, 1993.
 Before: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, and LEWIS, Circuit Judges.
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 The police arrested Diane Cain and charged her with several violations of the Pennsylvania Criminal Code of Crimes and Offenses resulting from her disorderly and assaultive behavior. Before trial, she petitioned to be placed in a program known as Accelerated Rehabilitative Disposition. Under the ARD program, a prosecutor can move the court to place a defendant on probation without trial. If ARD is approved by the court and the defendant satisfactorily completes the probationary period, his or her charges are dismissed. Under a policy of the Delaware County District Attorney's Office, however, if the police may face civil liability, the District Attorney will not approve ARD unless the petitioner first executes a release-dismissal agreement. Cain, in compliance, executed such an agreement and released all civil rights claims against the police officers who arrested her. Nevertheless, she later sued three municipalities in Delaware County, Pennsylvania, their respective police departments, and a number of individual police officers under 42 U.S.C. § 1983. The gravamen of her complaint was that the police officers used excessive force to arrest her.
 
 
 2
 The defendants all moved for summary judgment, contending that the release-dismissal agreement provided them an absolute defense. The district court granted the defendants' summary judgment motion and dismissed the complaint. It opined that the release was a complete bar to Cain's action because she had signed the release voluntarily and the release was not adverse to the public interest. The court found no genuine issues of material fact and decided these points as a matter of law. Charles Cain, executor of Diane Cain's estate, appealed and a panel of this Court reversed the summary judgment and remanded the cause for further proceedings.[1] On consideration of a petition for rehearing filed by the defendants, the full Court then voted to vacate the panel opinion and rehear the case in banc.
 
 
 3
 The issue before us is whether the release-dismissal agreement that Diane Cain signed was valid and enforceable. The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review is plenary. Public Interest Research Group, Inc. v. Powell Duffryn Terminals, Inc., 913 F.2d 64 (3d Cir.1990), cert. denied, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Because we find that the agreement is unenforceable as a matter of law, we will reverse and remand the cause for the district court to decide the merits of Cain's claims.
 
 I.
 
 4
 The leading case in the law of release-dismissal agreements is Town of Newton v. Rumery, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987). Bernard Rumery was charged with witness tampering for threatening harm to the complaining witness in a sexual assault case if she testified against Rumery's friend. Rumery's attorney threatened a civil suit for false arrest against the town unless the state dropped the charges. After negotiating with the state prosecutor, Rumery's attorney drafted a release-dismissal agreement by which Rumery released his claims against the town and the state prosecutor dismissed the charges against Rumery.
 
 
 5
 Rumery discussed the agreement with his attorney for an hour and considered it for three days before he signed it. The witness tampering charges were dropped, but Rumery sued the town of Newton anyway under 42 U.S.C. § 1983. The town moved for summary judgment arguing that Rumery's suit was barred by the release agreement. The district court granted the motion, but on appeal, the Court of Appeals for the First Circuit held that the release was unenforceable because these agreements were per se against public policy.
 
 
 6
 The Supreme Court reversed, holding that release-dismissal agreements are not per se unenforceable. Rumery, 480 U.S. at 394, 107 S.Ct. at 1193. It refused to treat section 1983 differently than any other constitutional or statutory right and concluded that the validity of these agreements is best resolved by reference to traditional common law principles. Id. at 391, 107 S.Ct. at 1191 (citing Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984)). Justice Powell, writing for a majority of five, adopted a case-by-case approach, reasoning that an agreement would be unenforceable "if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." Id. 480 U.S. at 392, 107 S.Ct. at 1191.
 
 
 7
 The central tension the Rumery Court harmonized was between the need, on the one hand, to curb the temptation to "trump up charges in reaction to a defendant's civil rights claim, suppress evidence of police misconduct, and leave unremedied deprivations of constitutional rights," while on the other hand, to enforce one's "considered decision that he would benefit personally from the agreement" giving up his individual right to sue. Id. at 394-95, 107 S.Ct. at 1193 (internal quotation marks omitted). The Court resolved this tension by requiring that release-dismissal agreements be executed voluntarily, free from prosecutorial misconduct and not offensive to the relevant public interest. Id. at 398, 107 S.Ct. at 1195. Under this analysis, the concept of prosecutorial misconduct is embedded in a larger inquiry into whether enforcing the release would advance the public interest. In sum, the majority approved the concept if a defendant seeking to enforce a release-dismissal agreement can prove that the agreement was voluntarily executed and not adverse to the public interest.
 
 
 8
 With respect to the relevant public interests, Justice Powell, writing only for a plurality of four,[2] identified two public interests that could justify a release-dismissal agreement: the interest in protecting officials from the burdens of defending "marginal" or "frivolous" section 1983 claims and the interest in expeditiously resolving minor criminal charges while allocating the scarce resources of the criminal justice system to the prosecution of more serious charges. Id. at 395-96, 107 S.Ct. at 1193.
 
 II.
 A.
 
 9
 Hence, this appeal presents two primary questions: whether Diane Cain's release agreement was voluntary, and if so, whether it meets the public interest test enunciated in Rumery. We need not decide the first issue because we will simply assume that Cain voluntarily executed the release. Before we consider Rumery's public interest requirement, however, we must determine whether simply showing that the agreement was voluntary is sufficient to validate it. The Rumery majority specifically left that question open. See id. at 398 n. 10, 107 S.Ct. at 1195 n. 10.
 
 
 10
 The Rumery Court rejected the view that voluntary release-dismissal agreements are per se adverse to the public interest. We see no reason to embrace the opposite extreme that voluntary release-dismissal agreements are per se beneficial to the public interest. Even though "Congress has confined the decision to bring [section 1983] actions to the injured individuals, not the public at large," id. at 395, 107 S.Ct. at 1193, there are nonetheless strong public interests in allowing section 1983 suits and, conversely, strong public interests against release-dismissal agreements that bar colorable section 1983 claims. Litigants who bring meritorious section 1983 claims advance societal interests because the vindication of their constitutional rights helps provide an important check on public officials and presumably deters a range of official misconduct, such as the use of excessive force alleged here. For this reason we hold that mere voluntariness is not enough to support enforcement of a release-dismissal agreement. The party seeking to enforce the agreement must show that upon balance the public interest favors enforcement.[3]
 
 B.
 
 11
 The Court in Rumery recognized that there can be a valid law enforcement interest in preventing the public fisc from being wasted by defending frivolous lawsuits. By implication, such an interest may be sufficient to justify judicial enforcement of a release-dismissal agreement. Although it is the prosecutor's duty to represent the public generally rather than protect public officials who may be defendants in civil rights actions, there is nonetheless a public interest in governmental thrift and providence. Accordingly, a release-dismissal agreement that averts litigation over marginal or frivolous section 1983 claims may advance the public interest. For this reason, if the time and expense of defending such a suit actually motivated a prosecutor's decision to drop criminal charges in exchange for the defendant's release of civil rights claims, then the prosecutor is presumably making the decision, not out of concern for the private interests of government officials, but rather out of concern for the public interest in preserving governmental resources.
 
 
 12
 The standard for determining whether a release meets the public interest requirement is an objective one, based upon the facts known to the prosecutor when the agreement was reached. Additionally, the public interest reason proffered by the prosecutor must be the prosecutor's actual reason for seeking the release. In Rumery, the Supreme Court enforced the release agreement because Rumery voluntarily signed the agreement and no improper motivation tainted the prosecutor's decision to seek the release. In fact, the parties agreed that the prosecutor sought the release because he wanted to protect a witness from the trauma of testifying in two trials. This motivation constituted "an independent, legitimate reason ... directly related to his prosecutorial responsibilities," and advanced a legitimate prosecutorial function. Id., 480 U.S. at 398, 107 S.Ct. at 1194. Any alternative to the "actual reason" requirement creates the real danger that actions taken pursuant to an improper motive, such as to protect public officials from a meritorious civil rights lawsuit, may be legally excused because a court later finds that some "benefit" has been incidentally achieved. Thus, the issue is not what the prosecutor might or could have thought; it is what actually motivated him or her in seeking a particular release.
 
 C.
 
 13
 The Delaware County District Attorney's Office has a blanket policy of requiring a release from every ARD petitioner who might have a civil rights claim against government officials. This policy precludes even an otherwise qualified applicant from the rehabilitative benefits of the program unless that person executes a release-dismissal agreement. Assistant District Attorney Wayne Punshon described the policy as follows:
 
 
 14
 Insofar as ARD is concerned, ... the ARD Program is to bypass the litigation that is involved in a criminal prosecution; ... to proceed directly to what would likely be the outcome of the case in order to ease the burden of caseloads on the Courts.
 
 
 15
 In conjunction with that, it's in the interest of the prosecutor's office and the police to avoid the needless litigation, the ofttimes frivolous actions that are brought and to resolve the entire matter at the time of the ARD hearing in an amicable fashion. That is why a release is required [in] situations where it may be reasonably anticipated that litigation will subsequently arise after the individual is ... given ARD....
 
 
 16
 In this particular kind of a case, what we are dealing with here is a domestic situation where, undoubtedly, emotions run high. We are dealing with in--I don't know what percent--but, in an extraordinary high percent of cases where the people, the complainants or the defendants are intoxicated. And, they may very well remember things differently--I'm not saying that in this particular case, but I'm talking about this class of cases. So, the idea is that even though they may very well believe that the facts were such and such, we are dealing with a District Justice's prima facie determination that a crime was committed by the defendant.
 
 
 17
 App. 268-69 (emphasis added).
 
 
 18
 In effect, the District Attorney's reason for seeking this release stems from his belief that since Diane Cain's case arose from a domestic dispute, and thus fell within the class of cases where the number of frivolous cases reach "an extraordinary high percent," the public interest was served by avoiding a civil rights lawsuit. The District Attorney did not individually assess the merits of Diane Cain's civil rights claims, but simply required that she agree to release them before he would move the court to admit her into ARD.[4] So, as to "this class of cases," the District Attorney's policy is quite simple: no release, no ARD.
 
 
 19
 The public policy implications must be examined on a case-by-case basis to determine whether the public interest in enforcing the agreement outweighs any harm. Rumery, 480 U.S. at 392, 107 S.Ct. at 1191 (citing Restatement (Second) of Contracts § 178(1) (1981)). To determine the relevant public interest here, we must consider the purpose of ARD, the nature of the prosecutorial duty to administer it, and how Delaware County's blanket policy affects both the administration of ARD and the prosecutorial function. ARD is a rehabilitation program that allows prosecutors to avert a trial and defendants to ultimately earn a dismissal of criminal charges by satisfactorily completing a probationary program. The purpose of ARD is primarily to rehabilitate offenders and secondarily to promptly dispose of minor criminal charges. Pa.Crim.R. 160-86 & Committee Introduction. It was intended for first time offenders who are charged with minor crimes and who appear receptive to treatment and rehabilitation. ARD encourages first time offenders to reform by offering them a clean record if they successfully complete the program, rather than impose a traditional and historically non-productive period of imprisonment.
 
 
 20
 District attorneys administer ARD, and the decision to request ARD of the court rests in their sound discretion. Commonwealth v. Armstrong, 495 Pa. 506, 434 A.2d 1205, 1208 (1981). While admission into ARD is not a right, Commonwealth v. Paul, 383 Pa.Super. 486, 557 A.2d 357, 358 (1989), prosecutors do not have naked power to grant or deny the program at whim. Commonwealth v. Lutz, 508 Pa. 297, 495 A.2d 928, 935 (1985). They must administer ARD in a manner that is consistent with its goals. Prosecutors abuse their discretion if they employ criteria unrelated to these two goals, that is, "some criteria for admission to ARD wholly, patently and without doubt unrelated to the protection of society and/or the likelihood of a person's success in rehabilitation." 495 A.2d at 935.
 
 
 21
 The decision to recommend ARD is directly related to the prosecutorial function. Given ARD's goals, some legitimate considerations include the defendant's potential for rehabilitation, criminal record, the nature of the crime charged, and whether that person presents a danger to society. It cannot be disputed that the District Attorney's blanket policy is wholly and patently unrelated to the goals of ARD. It is both under- and over-inclusive because it may allow unqualified criminal defendants to be admitted into ARD if they sign releases and at the same time exclude the otherwise qualified because they did not. The policy does not seek to rehabilitate those who are deemed capable of it, nor does it seek to protect society from those who are not.
 
 
 22
 The District Attorney rationalizes his policy on the ground that he and the police have an interest in avoiding "the needless litigation, the ofttimes frivolous actions that are brought and to resolve the entire matter at the time of the ARD hearing in an amicable fashion." When asked at oral argument whether this policy would also preclude meritorious claims, counsel for the District Attorney conceded that it would. The policy does not distinguish between frivolous and meritorious litigation; it indiscriminately curtails both. While ARD was designed in part to promptly dispose of minor criminal charges, thus eliminating the need for costly and time-consuming criminal trials, it was never intended to dispose of civil rights claims.
 
 
 23
 The District Attorney failed to apply any of the relevant factors to Diane Cain's case. In fact, he conceded that he did not even investigate her eligibility for the ARD program. Had he done so, he would have found that Cain was not a first time offender; that she had been arrested on three occasions for retail theft; that she had previously participated in ARD; and that she allegedly had been involved in several incidents in which she stabbed her husband with a knife. The District Attorney testified that he erred and had he been aware of Cain's criminal record "she would not have received [ARD]."
 
 
 24
 Rumery requires the District Attorney to identify a legitimate public policy supporting the decision to dismiss criminal charges in return for a defendant's agreement to release a civil rights claim. We recognize that protecting public officials from civil suits may in some cases provide a valid public interest and justify the enforcement of a release-dismissal agreement. Nonetheless, we believe that under Rumery there must first be a case-specific showing that the released civil rights claims appeared to be marginal or frivolous at the time the agreement was made and that the prosecutor was in fact motivated by this reason. There was no such showing here. Not only did the Delaware County District Attorney's Office fail to engage in any individualized analysis of Cain's civil rights claims before obtaining a release-dismissal agreement from her, the defendants also have made no attempt to establish that Cain's section 1983 suit was marginal or frivolous or that the release-dismissal agreement advanced any other public interest. Rather, the defendants have chosen simply to rely on the District Attorney's Office blanket policy of requiring release-dismissal agreements for ARD candidates as proof that this release-dismissal agreement advanced the public interest. This, as we have said, is insufficient.
 
 III.
 
 25
 Simply stated, this record will not support a determination that the public interest requirement of Rumery has been satisfied. As we have explained, because the District Attorney made no case-specific showing that the public interest was served by obtaining the release, the district court erred by determining that as a matter of law the public interest requirement was satisfied. We will reverse the grant of summary judgment for the defendants and remand the cause for the district court to decide the merits of Cain's claims.
 
 
 26
 GREENBERG, Circuit Judge, concurring in part and dissenting in part:
 
 
 27
 I agree with much of the majority opinion and in particular with its central point that the blanket practice of requiring a release as a condition for admission into the ARD program is invalid. But I dissent from its disposition, as I believe that the case should be remanded to give the appellees the opportunity to establish that the release-dismissal agreement was justified either on the ground that Ms. Cain's claim was frivolous, regardless of the state of the district attorney's knowledge when the agreement was made, or on some other ground predicated upon other factors demonstrating that enforcement of the agreement would further a valid public interest.
 
 
 28
 I believe that ordinary contract principles and simple fairness require the remand I envision. The appellants, though challenging the validity of the agreement, cannot deny that Ms. Cain received from it the benefit of being accepted into the ARD program, which was the outcome she sought of the criminal proceeding. Accordingly, the appellants are in a position similar to that of parties to a contract who, if they seek its rescission, usually are required to return the benefits they received from the agreement. This principle is hardly new, for as long ago as 1886 the Court of Errors and Appeals of New Jersey was able to say that "[i]t is a well-settled principle of law and equity that a party cannot rescind a contract by his own will, and at the same time keep possession of the consideration, in whole or in part, which he has received under it." Doughten v. Camden Bldg. & Loan Ass'n, 7 A. 479, 480 (1886). But the appellants cannot offer to return the benefit Ms. Cain received from the contract because she is dead and the prosecution cannot be reinstituted. In these circumstances, the appellees should be permitted to justify the release-dismissal agreement on grounds alternative to the blanket policy.
 
 
 29
 In reaching this conclusion, I have not overlooked the fact that if the appellees now establish that the agreement was valid, they will be relying on a justification identified after Ms. Cain and the district attorney agreed to it. But there is nothing unusual in permitting an after-the-fact inquiry into whether a public official's actions, which were in fact based on an improper predicate, could have been justified for other reasons and therefore validated. See Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In Nix v. Williams and Mt. Healthy v. Doyle this form of inquiry was undertaken even though the person challenging the public official's conduct had not asked the official to engage in that conduct. Here, the after-the-fact inquiry is even more appropriate because Ms. Cain initiated the proceedings which led to the release-dismissal agreement. Indeed, in my view, the Nix v. Williams and Mt. Healthy v. Doyle principle in itself requires the remand I would order.
 
 
 30
 The majority had no need to consider whether Ms. Cain entered into the transaction voluntarily. My position requires me to face this issue, although in consideration of the procedural posture of the case, I see no need to write on this issue at length.[1] I simply note that I would hold that on the record here there are no disputed facts which could permit a holding that the agreement was not voluntary. The record shows that Ms. Cain entered into the release-dismissal agreement without coercion as the product of a deliberate and informed decision. Furthermore, her attorney gave her a detailed explanation that if she signed the agreement she would be prohibited forever from suing the officers named in it. Indeed, her attorney went so far as to read the release to her out loud. It also is undisputed that Ms. Cain was an intelligent woman, fluent in English and experienced in criminal matters, and that she had months to consider whether to sign a release.
 
 
 31
 Circuit Judge ALITO joins in this opinion.
 
 
 
 *
 Judge Higginbotham was present when this case was decided by the panel, but retired before the case was reheard in banc
 
 
 [1]
 Diane Cain died in 1991 from causes unrelated to this case
 
 
 [2]
 Justice O'Connor, who provided the fifth vote for the Court's holding that release-dismissal agreements are not per se impermissible, did not join this part of Justice Powell's opinion
 
 
 [3]
 Other courts of appeals have similarly required that defendants demonstrate a public interest justification for release-dismissal agreement in addition to voluntariness. See, e.g., Woods v. Rhodes, 994 F.2d 494 (8th Cir.1993); Berry v. Peterson, 887 F.2d 635, 641 (5th Cir.1989); Lynch v. Alhambra, 880 F.2d 1122, 1128 (9th Cir.1989). We have found no court of appeals decision that has held to the contrary
 
 
 [4]
 Assistant District Attorney Punshon testified: "That's--had I not been given the release, I would not have made the motion. It's not a condition of the ARD Program that while she entered it or as she entered it that she sign the release. It's a condition of my making the motion." App. 308-09
 
 
 [1]
 Of course, the mere fact that unless Ms. Cain signed the release she faced prosecution did not render the agreement involuntary. Town of Newton v. Rumery, 480 U.S. 386, 393, 107 S.Ct. 1187, 1192, 94 L.Ed.2d 405 (1989)