**CUBA–DIAZ**

v.

**TOWN OF WINDHAM et al.**

**No. 3:02CV428 (JBA).**

United States District Court, D. Connecticut.

Aug. 1, 2003.

Sebastian O. DeSantis, Darren G. Waggoner, Sabilia DeSantis & Waggoner, New London, CT, for Plaintiff.

Frank J. Szilagyi, Josephine A. Spinella, Silvester, Daly & Delaney, Hartford, CT, for Defendants.

### Ruling on Defendants' Motion for Summary Judgment
### [Doc. # 34]

ARTERTON, District Judge.

Bruno Cuba–Diaz filed this lawsuit claiming that the Town of Windham, the Chief of the Willimantic Police Department ("WPD"), and two WPD officers violated his civil rights by holding him in prison for 33 days for the State of New Jersey to pick up as a fugitive wanted in New Jersey but subsequently determined by New Jersey not to be the fugitive New Jersey sought. Defendants have moved for summary judgment, asserting that they had probable cause to believe that Cuba–Diaz was the wanted fugitive, and that a release he signed as part of the process of being extradited to New Jersey is a complete bar to all of his claims. As set out below, the motion is denied as to the claims against Coriaty but granted as to the remaining defendants.

## I. Factual Background

On February 15, 2001, Coriaty arrested Cuba–Diaz for breach of peace. Defendants assert that at the police station, a National Criminal Information Center ("NCIC") check was performed which led Coriaty to believe that Cuba–Diaz was wanted by New Jersey for a violation of parole. Coriaty testified at his deposition that he would have released Cuba–Diaz on a promise to appear, but, believing that Cuba–Diaz was a fugitive wanted on an attempted murder charge in New Jersey, instead held him on a $25,000 bond. At a February 16, 2001 court appearance (at which Cuba–Diaz was represented by counsel), bond was set at $100,000. On March 15, 2001, Cuba–Diaz again appeared in court (again represented by counsel) and waived his right to challenge extradition to New Jersey. The waiver of extradition form that he signed contained a blanket release of any causes of action relating to his arrest and detention in Connecticut. Following Cuba–Diaz's waiver of extradition, the prosecutor nolled the breach of peace charge. On March 21, 2001, after Cuba–Diaz had spent 33 days in jail, the New Jersey authorities came to pick him up, but they determined immediately that he was not the wanted man and released him. Nothing in the record suggests that Cuba–Diaz gave any indication to anyone that the police had the wrong man.

On March 19, 2002, Cuba–Diaz filed this four-count lawsuit against Coriaty (the arresting officer), Yarchak (another WPD officer allegedly involved with Cuba–Diaz's arrest and detention), King (police chief of WPD), and the Town of Windham. The first count is against all defendants and is brought under 42 U.S.C. § 1983. The second, third and fourth counts are state tort claims for false arrest, false imprisonment, and malicious prosecution, respectively.[1]

---

**1.** Plaintiff's memorandum in opposition to summary judgment withdraws the false ar-

Defendants have moved for summary judgment, arguing that the release signed by plaintiff as part of the waiver of extradition form is dispositive and, alternatively, that the officers had probable cause and/or are shielded by qualified and municipal immunity.

## II. Summary Judgment Standard

Summary judgment may be granted only if "there is no genuine issue as to any material fact ...." Fed.R.Civ.P. 56(c). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 68 (2d Cir.2001) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The party moving for summary judgment bears the burden of proving that there is no genuine issue of material fact, *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), which is discharged by pointing to an absence of proof on the non-movant's part, *Parker v. Sony Pictures Entm't Inc.*, 260 F.3d 100, 111 (2d Cir.2001). "The duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez*, 72 F.3d at 1060–61 (citations omitted).

## III. Enforceability of the Release

The release contained in the Waiver of Extradition form states:

[I] Release the State of Connecticut and all its officers and agents, and each Town of said State and all of its officers and agents, from any claim or cause of action arising out of my arrest and detention in connection with the present proceedings.

Defendants point to the unqualified language of the release and argue that it should be enforced because it is similar to release-dismissal agreements (in which persons charged with crimes release the police and prosecutors from any causes of action relating to their arrest and prosecution in exchange for a dismissal of the charges against them), citing the U.S. Supreme Court's decision in *Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), which upheld one such agreement.

The release-dismissal agreement at issue in *Rumery* involved a "sophisticated businessman" who signed an agreement whereby the state would drop criminal witness tampering charges against him in exchange for his releasing the state from all causes of action relating to his arrest and prosecution. *Id.* at 389–91, 107 S.Ct. 1187. The Court upheld the agreement, stressing that Rumery had discussed the agreement with counsel and considered it for three days (during which time he was not in jail) before signing it, *id.* at 394, 107 S.Ct. 1187, and noting that the agreement served the public interest because it prevented a sexual assault victim from having to testify at

---

rest, false imprisonment, and malicious prosecution counts against the Town of Windham, all counts against Yarchak, the malicious prosecution count against Coriaty, and the

false arrest, false imprisonment, and malicious prosecution counts against King. *See* Pl.'s Mem. Opp. [Doc. # 39] at 1.

a trial, *id.* at 397, 107 S.Ct. 1187.[2] *Rumery* is the appropriate framework, given the obvious parallels between a release-dismissal agreement.

In evaluating the validity of the *Rumery* agreement, the Supreme Court considered three factors: (1) the voluntariness of the agreement, (2) evidence of prosecutorial misconduct, and (3) whether enforcement of the agreement would "adversely affect relevant public interests." *Id.* at 397, 107 S.Ct. 1187.[3] The burden of proving each factor in the enforceability analysis is on the party asserting release as a defense. *Coughlen v. Coots,* 5 F.3d 970, 973 (6th Cir.1993). Although there may be subsidiary fact issues, each element of the *Rumery* enforceability test except voluntariness is a question of law for the court. *Berry v. Peterson,* 887 F.2d 635, 637 (5th Cir.1989).

There is no doubt that Cuba–Diaz signed the form voluntarily (he did so in front of a judge while represented by counsel) and there is also no evidence of prosecutorial misconduct (the prosecutor used the same waiver of extradition form that is used during all waivers of extradition in Connecticut). The only question is whether *Rumery*'s public interest prong is satisfied, which is "[t]he least well-defined element of a *Rumery* analysis." *Coughlen,* 5 F.3d at 975. To satisfy the public interest portion of the *Rumery* analysis, "[t]he party seeking to enforce the agreement must show that upon balance the public interest favors enforcement." *Cain*

*v. Darby Borough,* 7 F.3d 377, 380 (3d Cir.1993). "The [public interest] standard can be satisfied if the prosecutor demonstrates that obtaining the release was motivated by an independent, legitimate criminal justice objective." *Coughlen,* 5 F.3d at 975. Because "[t]he potential for abuse of release-dismissal agreements has led the Supreme Court to urge the use of a critical eye when courts are asked to enforce them," *Gonzalez v. Kokot,* 314 F.3d 311, 317 (7th Cir.2002) (citation omitted), courts employ a case-by-case analysis when determining whether a particular release-dismissal agreement adversely affects relevant public interests.

In *Cain,* the *en banc* Third Circuit disapproved of the Delaware County District Attorney's Office's blanket use of releases without regard to the individual facts of the case. The agreement at issue involved application of Pennsylvania's Accelerated Rehabilitative Disposition (ARD) program, under which the prosecutor can move to place the defendant on probation without a trial. If the court approves ARD and the defendant complies with the probation requirements, the charges are dismissed. However, the District Attorney's Office had a policy in cases where police officers faced potential civil liability of denying defendants the opportunity to enter the ARD program unless they signed a release-dismissal agreement. The plaintiff in *Cain* signed such an agreement, but later sued a number of police officers, police departments, and municipalities under § 1983, alleging excessive force.

**2.** *See also Dye v. Wargo,* 253 F.3d 296, 302 (7th Cir.2001) ("Waivers and releases serve the interests of *both* parties: a waivable right is more valuable to its holder than a non-waivable right, for the waivable right may be traded to the other side for a benefit that the holder values more highly than the right's exercise.") (emphasis in original; citation omitted).

**3.** The Third Circuit and the Ninth Circuit have set out the test as having only two prongs (voluntariness and the public interest) by fitting prosecutorial misconduct into the latter prong. *See Lynch v. City of Alhambra,* 880 F.2d 1122, 1128 (9th Cir.1989); *Cain v. Darby Borough,* 7 F.3d 377, 380–81 (3d Cir. 1993). This distinction is inconsequential.

Reversing the district court's grant of summary judgment, the Third Circuit held that the public interest requirement of *Rumery* had not been satisfied because the District Attorney "faile[ed] to engage in any individualized analysis of Cain's civil rights claims before obtaining a release-dismissal agreement from her ...." *Id.* at 383, 107 S.Ct. 1187. The court held that the proper standard for evaluating whether a release meets the public interest requirement "is an objective one based upon the facts known to the prosecutor when the agreement was reached [and that] the public interest reason proffered by the prosecutor must be the prosecutor's *actual reason* for seeking the release." *Id.* at 381, 107 S.Ct. 1187 (emphasis in original). The court held that the District Attorney's "blanket policy" of "no release, no ARD" was insufficient proof that the release-dismissal agreement advanced the public interest. *Id.* at 382–83, 107 S.Ct. 1187. The court also noted that although one purpose of ARD was to dispose of minor criminal charges quickly, eliminating the need for costly and time-consuming trials, ARD "was never intended to dispose of civil rights claims." *Id.* at 383, 107 S.Ct. 1187.

Similarly, the court in *Oliver v. City of Berkley*, 261 F.Supp.2d 870 (E.D.Mich. 2003), a case in which the plaintiff was sexually assaulted by a police officer during the course of her drunk driving arrest, refused to enforce a release that was part of plaintiff's plea agreement to a charge of careless driving. The court held that the release could not serve as a bar to plaintiff's claims against the officer because the prosecutor did not know about the alleged assault of plaintiff when he and the plaintiff entered into the release-dismissal agreement, and thus the release failed *Rumery*'s public policy prong. "[T]he Prosecutor could not have weighed the public interests of vindicating constitutional rights and deterring police misconduct

against the prosecutorial interest involved in accepting plaintiff's careless driving plea in lieu of an [operating while intoxicated] trial." *Id.* at 878.

■ In the instant case, the prosecutor did not make any case-by-case evaluation: the release is a part of blanket policy that covers all defendants who waive extradition proceedings. The purpose of waiving extradition is to eliminate the need for a costly and time-consuming extradition hearing; waiver of extradition was never intended to dispose of civil rights claims. On this basis alone, defendants cannot meet their burden of proving compliance with *Rumery*'s public interest requirement.

Additionally, the release contained in Connecticut's waiver of extradition form has no statutory support. The relevant waiver of extradition statute, which is based on the Uniform Criminal Extradition Act ("UCEA"), provides:

Any person arrested in this state charged with having committed any crime in another state or alleged to have escaped from confinement, or broken the terms of his bail, probation or parole may waive the issuance and service of the warrant provided for in sections 54–163 and 54–164 and all other procedure incidental to extradition proceedings, by executing or subscribing in the presence of a judge of any court having criminal jurisdiction within this state a writing which states that he consents to return to the demanding state; provided, before such waiver is executed or subscribed by such person, such judge shall inform such person of his rights to the issuance or service of a warrant of extradition and to obtain a writ of habeas corpus as provided in section 54–166. If and when such consent has been executed, it shall forthwith be forwarded to the

office of the governor of this state and filed therein. The judge shall direct the officer having such person in custody to deliver forthwith such person to the duly accredited agent or agents of the demanding state, and shall deliver or cause to be delivered to such agent or agents a copy of such consent; provided nothing in this section shall be deemed to limit the rights of the accused person to return voluntarily and without formality to the demanding state, nor shall this waiver procedure be deemed to be an exclusive procedure or to limit the powers, rights or duties of the officers of the demanding state or of this state.

Conn. Gen.Stat. § 54–181 (2003).[4]

Although the release contained in Connecticut's waiver of extradition form is not provided for by or contemplated in the statute, it has inexplicably been a fixture of the form since at least 1966. *See* 3 Douglas B. Wright, Connecticut Legal Forms 1638–39 (Atlantic Book Co.1966) (reproducing the version of the form used in 1966 with identical release language).[5]

The release has been included in revisions of the waiver of extradition form in 1968, 1981, and 1995. In contrast to the release in Connecticut's form, a random sample of waiver of extradition forms from eight other states (New York, West Virginia, New Mexico, Kentucky, Michigan, New Hampshire, Virginia, and North Carolina) revealed no use of a release of civil rights claims.

In sum, the release contained in Connecticut's waiver of extradition form serves no extradition-related purpose and is void as against public policy. Accordingly, it cannot shield defendants from Cuba–Diaz's causes of action.[6]

## IV. Claims Against Officer Coriaty

### A. § 1983 Claim

■ A plaintiff cannot make out a federal civil rights claim for false arrest where the arresting officer had probable cause. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). There is probable cause when (1) police have "knowledge or reasonably trustworthy in-

---

4. In 1957 Connecticut became one of the overwhelming majority of states that have since adopted UCEA. The UCEA language applicable to waiving extradition provides:

Any person arrested in this state with having committed any crime in another state or alleged to have escaped from confinement or broken the terms of his bail, probation or parole may waive the issuance and service of the warrant provided for in sections 7 and 8 and all other procedure incidental to extradition proceedings by executing or subscribing in the presence of a judge of any court of record within the state a writing which states that he consents to return to the demanding state; provided, however, that before such waiver shall be executed or subscribed by such person it shall be the duty of such judge to inform such person of his right to the issuance and service of a warrant of extradition and to obtain a writ of habeas corpus as provided for in section 10.

If and when such consent has been duly executed it shall forthwith be forwarded to the office of the Governor of this state and filed therein. The judge shall direct the officer having such person in custody to deliver forthwith such person to the duly accredited agent or agents of the demanding state, and consent; provided, however, that nothing in this Section shall be deemed to limit the rights of the accused person to return voluntarily and without formality to the demanding state, nor shall this waiver procedure be deemed to be an exclusive procedure or to limit the powers, rights or duties of the officers of the demanding state or this state.

UCEA § 25–A.

5. The state's legal librarians were unable to find pre–1966 waiver of extradition forms.

6. The Court does not reach plaintiff's alternative argument that consideration for the release was required but absent.

formation sufficient to warrant a person of reasonable caution in the belief that an offense has been committed," (2) "by the person to be arrested." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991). Here, the dispute is not whether the police had a reasonable basis for arresting the New Jersey fugitive; instead, the question is whether the police had probable cause to believe the plaintiff was the New Jersey fugitive.

When determining whether there was probable cause to support an arrest, "the Court must evaluate the totality of the circumstances based on those facts available to the officers at the time of the arrest." *Martin v. Rodriguez,* 154 F.Supp.2d 306, 312 (D.Conn.2001). A court should assess the existence of probable cause "based on probabilities, not certitude, as viewed by a reasonably prudent law enforcement official considering all the objective facts known prior to effectuating the arrest." *Carson v. Lewis,* 35 F.Supp.2d 250, 257 (E.D.N.Y.1999). However, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997).

According to defendants, WPD ran Cuba–Diaz's name and date of birth through NCIC on February 15, 2001 and the system yielded a "hit" on his name, showing that he was wanted by New Jersey for a violation of parole on a charge of attempted murder. Officer Coriaty testified in his deposition that "everything was matching up," including the name, date of birth, social security number, aliases, and number of arrests. Defendants claim that

on the morning of February 16, 2001, WPD conveyed this information to the New Jersey Department of Corrections ("NJDOC"), and NJDOC issued a warrant to apprehend and detain Cuba–Diaz. As a result of this claimed sequence of events, on February 16, 2001, WPD charged Cuba–Diaz as a fugitive from justice based on the outstanding New Jersey warrant, and Cuba–Diaz appeared in court. Defendants' summary judgment record does not support its claim of undisputed facts showing the existence of probable cause.

First, the February 15, 2001 NCIC report that the police allegedly relied on when charging Cuba–Diaz as a fugitive from justice is not in the record, despite the fact that Officers Coriaty and Yarchak both testified during their depositions that whenever an NCIC check is performed, the report that appears on the screen is printed out. Instead, in discovery plaintiff was given a March 2, 2001 NCIC report, without any demonstration that the lines "SOC 583303819" and "AKA/ CUBA, BRUNO DIAZ" (the two critical components tending to suggest that plaintiff was the wanted person) were not, or could not have been added to NCIC after February 15th but before March 2nd. Second, the March 2, 2001 report does not contain any record of New Jersey arrests, only that a "Bruno H. Diaz" is wanted in New Jersey for a parole violation on a charge of possession of a controlled substance with intent to distribute—not attempted murder. Coriaty's claim in his deposition that "everything was matching up" is further belied by the fact that the wanted person had a different weight, hair color, date of birth than Cuba–Diaz.[7]

A jury could also discredit defendants' account of the circumstances based on the

---

7. There are other discrepancies in Coriaty's deposition on related points. At one point he testified that he could not talk to Cuba–Diaz at all because Cuba–Diaz was too intoxicated

and only spoke Spanish, Pl.'s Ex. 5 at 33, but later testified that he was able to talk to him about having arrests in New Jersey despite Cuba–Diaz's intoxication, *id.* at 42.

fact that although the wanted person was named "Bruno Diaz," the identification and social security card in plaintiff's wallet when he was arrested identified him as "Bruno Cuba," plaintiff told several WPD officers that his name was "Bruno Cuba" and never identified himself as "Bruno Diaz," and shortly after his arrest plaintiff signed both the Prisoner Property Inventory Form and the Finger–Print card as "Bruno Cuba." While plaintiff has commenced this suit under the name "Bruno Cuba–Diaz," this name was apparently not known to defendants at the time they claim to have established probable cause. Finally, New Jersey's speedy release of plaintiff also provides a basis for a jury determination that probable cause did not exist.

For all of these reasons the Court concludes that on defendants' own record there exists a genuine issue of material fact as to whether Coriaty had probable cause to continue to hold plaintiff on the fugitive from justice charge.[8]

**B. Qualified Immunity on § 1983 Claim** [9]

"Qualified immunity ... shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McCardle v.*

*Haddad*, 131 F.3d 43, 50 (2d Cir.1997) (internal quotations omitted). "The objective reasonableness test is met—and the defendant is entitled to immunity—if officers of reasonable competence could disagree on the legality of the defendant's actions." *Id.* Because of the incomplete or disputed factual record, it cannot be ascertained what Officer Coriaty actually did or knew, and thus the Court cannot determine at this stage whether reasonable officers could disagree as to whether probable cause existed, and thus whether qualified immunity should shield him from liability. *Cf. Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996) ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers or may require a trial if the facts are in dispute.") (citations omitted).

**C. Other Claims Against Coriaty**

Plaintiff's remaining claims against Officer Coriaty are state law tort claims of false arrest and false imprisonment. In Connecticut, the law applicable to both of these claims is identical. *Outlaw v. City of Meriden*, 43 Conn.App. 387, 392, 682 A.2d 1112 (1996). "False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green v. Donroe*, 186 Conn. 265, 267, 440 A.2d 973, (1982). Defendants argue that Coriaty is entitled to

---

**8.** In their reply brief, defendants argue that Coriatry was not the actual officer who charged Cuba–Diaz as a fugitive from justice. While the fact that Officer Coriaty's signature appears on Cuba–Diaz's arrest record containing the fugitive from justice charge appears to foreclose this claim, the Court does not address the issue because "new arguments may not be made in a reply brief." *Ernst Haas Studio, Inc. v. Palm Press, Inc.,* 164 F.3d 110, 112 (2d Cir.1999); *see also* D. Conn. L. Civ. R. 7(d) ("[A reply brief] must be strictly confined to a discussion of matters

raised by the responsive brief and must contain references to the pages of the responsive brief to which reply is being made.").

**9.** Defendants invoke the federal qualified immunity doctrine for all of plaintiff's claims, even though some of them are state causes of action. Federal qualified immunity only extends to federal causes of action, not state claims. *See Conway v. Village of Mount Kisco, New York,* 750 F.2d 205, 214 (2d Cir. 1984).

summary judgment on those claims because probable cause existed. *See Beinhorn v. Saraceno*, 23 Conn.App. 487, 491, 582 A.2d 208 (1990) (there can be no cause of action for false arrest where the arresting officer had probable cause.). Because the factual disputes outlined above preclude the Court from deciding as a matter of law that Officer Coriaty had probable cause to believe that plaintiff was the wanted man, summary judgment must be denied with respect to these claims.[10]

## V. Remaining Defendants

■ In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that neither a municipality nor its government officials sued in their official capacities can be held liable under § 1983 on a respondeat superior theory of liability. *Id.* at 690, 691 n. 55, 98 S.Ct. 2018. While plaintiff maintains that the Town of Windham and Chief King can still be held liable because they failed to train the officers so that they would not violate § 1983, the record clearly establishes that the officers at WPD received training in how to perform and interpret NCIC results, making summary judgment appropriate for these defendants with respect to the § 1983 count. Plaintiff has withdrawn all other counts with respect to these defendants and Officer Yarchak, *see supra* note 1, making summary judgment appropriate for all remaining defendants.

## VI. Conclusion

Defendants' motion [Doc. # 34] is GRANTED IN PART AND DENIED IN PART. The motion is DENIED with respect to Officer Coriaty because the release signed by plaintiff is void as against public policy, and the record does not entitle Coriaty to summary judgment on probable cause or qualified immunity. The motion is GRANTED with respect to the Town of Windham and Chief King because there is no genuine issue of material fact from which a reasonable jury could conclude that these defendants failed to train officers to prevent § 1983 violations, and GRANTED as to Officer Yarchak in light of plaintiff's withdrawal of all claims against Yarchak in his summary judgment opposition.

IT IS SO ORDERED.

---

**10.** Connecticut law also provides qualified immunity, but, only where probable cause exists. *See* Conn. Gen.Stat. § 52–557n(b)(5).