**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2325
_____

SETH LINS,
            Appellant

v.

PENNSYLVANIA SOCIETY FOR THE PREVENTION OF CRUELTY TO
ANIMALS; NICOLE WILSON, Individually and in her Official Capacity; LISA
GERMANIS, VMD, Individually and in Her Official Capacity; JENNIFER NIELDS,
Humane Society Police Officer; DOES 1 TO 10
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-21-cv-03975)
District Judge: Honorable Edward G. Smith
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on June 28, 2024

Before: KRAUSE, RESTREPO, and MATEY, *Circuit Judges*

(Filed: July 23, 2024)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

KRAUSE, *Circuit Judge*.

Having sued the Pennsylvania Society for the Prevention of Cruelty to Animals ("PSPCA") and several of its agents or employees for allegedly injuring and killing certain French Bulldogs while in PSPCA custody, Appellant Seth Lins now appeals the District Court's grant of summary judgment in the PSPCA's favor.[1]  We perceive no error in the District Court's determination that Lins waived his right to sue Appellees when he voluntarily surrendered the dogs pursuant to a surrender and release form, and we therefore will affirm.[2]

---

[1] Lins brought the following claims pursuant to 42 U.S.C. § 1983: (1) Fourth Amendment unreasonable seizure of the dogs; (2) Fourth Amendment unreasonable seizure of the dogs (*Monell*); (3) Fourteenth Amendment due process; (4) Fourteenth Amendment due process (*Monell*); (5) Fourth Amendment unreasonable seizure of computers and files; and (6) negligence under Pennsylvania law.  On appeal, Lins challenges the District Court's ruling on all but the fifth claim.

[2] By way of background, in September 2019, the PSPCA executed a warrant to seize over fifty dogs from Appellant Seth Lins' property, sixteen of which were French Bulldogs.  Several months later, at his preliminary hearing concerning related criminal charges, Lins signed a surrender and release form transferring his ownership of all sixteen French Bulldogs to the PSPCA and releasing the organization from "any claim," "whether past, present or future," "arising out of . . . the removal of any animal subject to [the] release."  App. 45.  While the PSPCA seized many dogs from Lins' property, concedes that his claims pertain only to the French Bulldogs.

## I.   DISCUSSION[3]

On appeal, Lins argues, first, that he never signed the surrender and release form for the dogs in question, and, second, that if he did, it was not voluntary, rendering the release invalid.  Neither argument is persuasive.

### A.  Whether Lins Signed the Surrender and Release Form

Lins argues that there exists a genuine dispute of material fact as to whether he signed the form because "not only did [he] not recall" signing the surrender and release form, but "he had never seen [it]" until Appellees provided it to him during discovery.  Opening Br. 19.  In support, Lins relies solely on his own affidavit, which he submitted in opposition to the PSPCA's motion for summary judgment.  But "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment," *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (quotation marks omitted), and while Lins denies having ever seen or signed the form, the overwhelming record evidence tells a different story.  Specifically: (1) Lins' signature and initials appear multiple times on the form;[4] (2) Lins' criminal defense counsel emailed an assistant district attorney asking her to send him "carbon copies of the PSPCA Surrender forms that *Mr. Lin[s] completed*" during the preliminary hearing, App. 91 (emphasis added),

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  We have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over a grant of summary judgment.  *Rush v. City of Philadelphia*, 78 F.4th 610, 619 (3d Cir. 2023).

[4] Indeed, Lins claims to not "recognize the signatures or initializations" on any of the surrender and release forms, App. 46, yet the signature on his sworn affidavit bears a marked resemblance to the signatures on those forms.

one of which encompassed the French Bulldogs; (3) during his plea hearing, Lins'

counsel explained to the judge that "at the preliminary hearing" Lins "signed over his

ownership interest and the rest of the animals . . . to make sure they could be cared for by

the PSPCA," App. 112; (4) at that same hearing, a PSPCA officer similarly testified that

Lins had "surrender[ed] the remaining dogs" at the preliminary hearing, Suppl. App. 392;

and (5) the record contains what appears to be a supplemental "incident report form" filed

by a county detective stating that she "was . . . present for the defendant, Seth Lins filling

out the [PSPCA] surrender paperwork and signing the form in accordance to the

agreement." App. 142 (capitalization altered).

In short, "a bare but sworn assertion of [Lins'] lack of knowledge will not suffice

to create a material dispute of fact where that assertion is impeached by a well supported

showing to the contrary," *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254,

263 (3d Cir. 2012) (quotation marks omitted), and, here, Lins fails to counter the record

evidence indicating he signed the form.

**B. Whether the Surrender and Release Form is Enforceable Against Lins**

Lins next argues that he "did not voluntarily release [A]ppellees from liability" by

signing the surrender and release form. Opening Br. 15. Again, we disagree.[5]

The District Court treated the form as a "[r]elease-dismissal agreement[] that

waive[s] section 1983 liability," App. 15, which, to be enforceable, must have been

---

[5] We do not address whether Lins released his state law negligence claim, as Lins makes no specific argument as to the release's effect on that claim, *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017), nor does he

"voluntarily executed and not adverse to the public interest," *Cain v. Darby Borough*, 7 F.3d 377, 380 (3d Cir. 1993) (discussing *Town of Newton v. Rumery*, 480 U.S. 386, 398 (1987)). As an initial matter, Lins fails to raise public-interest concerns in his opening brief, so those arguments are forfeited. *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017). As such, we need only address whether Lins' execution of the form was voluntary. And while "the factors relevant to make the determination of voluntariness" rely "upon the particular facts and circumstances surrounding th[e] case," *Livingstone v. North Belle Vernon Borough*, 12 F.3d 1205, 1211 (3d Cir. 1993) (quoting *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1095 (3d Cir. 1988)), neither party disputes the District Court's application of the following factors to assess voluntariness[6]:

> (1) whether the release is clear on its face, (2) whether the signer [of the release] [was] in custody at the time of signing, (3) whether the signer was represented by counsel, (4) whether the signer's attorney drafted the document, (5) whether the signer expressed any unwillingness, (6) the time with which the signer considered the document, and (7) whether the signer's

challenge the District Court's choice to decline to exercise supplemental jurisdiction over it.

[6] On appeal, the parties set forth competing standards to evaluate whether the release was valid. Lins, as he did before the District Court, offers the standard applicable to the waiver of federal statutory rights, but does not contend that the District Court's application of the release-dismissal standard was incorrect. The PSPCA, on the other hand, does not challenge the District Court's application of the release-dismissal standard as to voluntariness, but argues the facts of this case are distinguishable from release-dismissal cases as to the public-interest prong of the standard. We need not resolve this dispute because, as set forth above, our analysis is limited to voluntariness in the release-dismissal context, which here is uncontested.

5

background and experience helped [them] to understand the terms of the release.

App. 16 (alterations in original) (quotation marks omitted) (quoting *Livingstone*, 12 F.3d at 1210).

Weighing those factors, we conclude that Appellees met their burden to prove that Lins voluntarily released them from liability when he signed the surrender and release form. *Livingstone*, 12 F.3d at 1211 ("The burden of proof is upon the party relying on the release.").[7]

Lins, who was never in custody, agreed to surrender the French Bulldogs in exchange for a reduction in restitution, a key feature of his plea agreement that was communicated to Lins' attorney weeks before the preliminary hearing. At that hearing and with the benefit of counsel, Lins signed and initialed the form, which contained language identical to that to which he accepted four months prior.

Indeed, Lins claims the release language was not clear on its face because, though the release encompasses "any claim," App. 45, the form "do[es] not clearly and

---

[7] This Court, while reviewing the voluntariness of *oral* release-dismissal agreements under the "clear and convincing evidence" standard, *see Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 534-36 (3d Cir. 1996), has not yet opined on the burden of proof for *written* agreements, *see* Third Circuit Model Civil Jury Instructions § 4.7.3 n.112 (updated Dec. 2023) ("The Court of Appeals has not determined the appropriate standard of proof of voluntariness in the case of a written release."). While other circuits have applied a preponderance standard, *see, e.g.*, *Burke v. Johnson*, 167 F.3d 276, 284-85 (6th Cir. 1999); *Gonzalez v. Kokot*, 314 F.3d 311, 318-19 (7th Cir. 2002), we need not decide which one applies, as Appellees satisfy even the more stringent test.

specifically identify the waiver of *federal* claims," Opening Br. 23 (emphasis added).[8]

But courts have accepted such broad terms in similar agreements, *see, e.g.*, *Gonzalez v. Kokot*, 314 F.3d 311, 313, 315 (7th Cir. 2002) (upholding release-dismissal agreement that released state actors "from any and all claims . . . of any kind or nature whatsoever" (quotation marks omitted)), and Lins does not dispute the District Court's finding that his education and work experience together demonstrate "he possessed enough education to understand th[ose] terms," App. 18. Nor, beyond his bald assertion that "there is no evidence that [he] understood" he "waiv[ed] . . . his constitutional rights," Opening Br. 27, does Lins claim that his counsel was ineffective, *cf. Berry v. Peterson*, 887 F.2d 635, 639-40 (5th Cir. 1989) (concluding, despite appellant's "protestations of ignorance" and claims that his "attorney did not sufficiently communicate to [him] the meaning" of the release-dismissal agreement, that agreement was executed voluntarily).[9]

## II.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's grant of summary judgment to Appellees.

---

[8] Lins argues in passing that the form's language releasing claims concerning "the removal of any animal subject to the release," App. 45, is not "specific or clear enough to encompass the manner in which [Appellees] acted during the seizure, prior to removing the animals from [Lins'] property," Opening Br. 23. But the harm Lins alleges Appellees inflicted on the French Bulldogs occurred in the *process of removing* those dogs from his property, and Lins does not assert we must construe the term "removal" more narrowly.

[9] Lins claims that his execution of the agreement was involuntary because his counsel did not negotiate its language. Nobody contends that Lins' counsel drafted the agreement or negotiated its specific terms. But Lins concedes that his counsel and the county "were in negotiations regarding . . . the dogs," Opening Br. 25, and, as Appellees point out, the form itself contemplates negotiation. Regardless, in similar contexts, "the

7

absence of . . . an opportunity" to negotiate does not necessarily mean the "release [of federal claims] is unknowing or involuntary," *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 454 n.4 (3d Cir. 1988), and other "facts and circumstances surrounding [this] case" indicate that Lins' execution of the form was voluntary, *Livingstone*, 12 F.3d at 1211 (quotation marks omitted).